JOSEPH J. D'URBANO vs. COMMONWEALTH.

Suffolk.    October 2, 1962. — February 12, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Delinquent Child.  Jurisdiction,* Delinquent child.  *District Court,* Juris-
diction.  *Superior Court,* Jurisdiction.  *Practice, Criminal,* Double jeop-
ardy.  *Constitutional Law,* Speedy trial.

G. L. c. 119 did not give a District Court jurisdiction to deal in its juvenile
session with an offender over twenty-one years of age even though he
was under seventeen when the offence was committed.  [469–472]
The Superior Court had jurisdiction of an indictment of a defendant who
was twenty-one years old at the time of the indictment, although he
had been sixteen years old at the time of the commission of the offence
and there had been no valid juvenile proceeding against him under
G. L. c. 119, §§ 52-63.  [472]
Nothing in G. L. c. 119, § 72, extends the provisions of § 74 to criminal
proceedings against an adult.  [472]
G. L. c. 119, §§ 73-83, governing criminal proceedings in District Courts
against children, were inapplicable in the case of one, indicted when
an adult for an offence committed when he was sixteen, against whom
there had been no valid delinquency proceeding under §§ 52-63.  [472]
Where the defendant in a criminal proceeding in the Superior Court
established on writ of error that that court, in view of his age, sixteen,
and other circumstances, had had no jurisdiction to sentence him upon a
plea of guilty, and the judgment was reversed and the indictment
dismissed, the principle against double jeopardy did not bar prosecution
of a new criminal proceeding, commenced against him in the Superior
Court after he had become of age, based upon the same conduct as the
earlier proceeding.  [472–473]
A contention by a defendant indicted when twenty-one years old for
second degree murder by reason of a killing committed when he was
sixteen years old, that he had been unconstitutionally deprived of a
speedy trial, was without merit where it appeared that within five
months after the killing the defendant pleaded guilty of murder in the
second degree upon an earlier indictment for murder in the first degree,
that subsequently on writ of error his conviction and sentence on the
earlier indictment were vacated, and that, upon the later indictment for
second degree murder, the defendant did not elect to plead not guilty
but pleaded guilty of manslaughter.  [473]
Upon writ of error by a defendant born in October, 1938, to reverse a
sentence to prison for eighteen to twenty years upon a plea of guilty of

manslaughter to an indictment for murder in the second degree returned in December, 1959, for a killing in December, 1954, a contention by him that justice required his discharge because there had been no valid juvenile delinquency proceeding against him under G. L. c. 119, §§ 52-63, while he was of an age to be subject to such a proceeding, and as an adult he was forever deprived thereof, was without merit where it appeared that in 1955, within five months after the killing, he had been indicted for first degree murder and in the Superior Court had pleaded guilty of murder in the second degree and had been sentenced to life imprisonment, that in November, 1959, following the decision of this Court in March, 1959, in *Metcalf* v. *Commonwealth,* 338 Mass. 648, the judgment of life imprisonment under the earlier indictment had been reversed on writ of error and a purported juvenile delinquency proceeding against the defendant in a District Court under §§ 52-63 had been dismissed under § 61, and that in all proceedings the defendant was represented by counsel. [473–476]

PETITION for writ of error filed in the Supreme Judicial Court for the county of Suffolk on December 20, 1960.

The case was reserved and reported without decision by *Whittemore, J.*

*Monroe L. Inker* for the petitioner.

*James W. Bailey,* Assistant Attorney General, for the Commonwealth.

WHITTEMORE, J.  This petition for a writ of error to reverse a judgment of the Superior Court on an indictment for murder in the second degree, dated December 11, 1959, was reported by a single justice without decision on the pleadings, the return, agreed copies of records of the District Court of Chelsea, and a statement of facts by the judge of that court.

The issues concern the rights under the juvenile procedures of G. L. c. 119, §§ 52-83, of a person twenty-one years of age indicted for an offence committed when he was sixteen years of age, where the proceedings which had been instituted promptly after the crime in 1954 had failed to conform to the requirements of the statute as construed in *Metcalf* v. *Commonwealth,* 338 Mass. 648.  In view of our holding, hereinafter stated, that, because D'Urbano was an adult at the time of the indictment in 1959, the juvenile procedures were inapplicable, there is no occasion to review the pre-indictment District Court proceedings.

D'Urbano v. Commonwealth.

On December 8, 1954, the petitioner D'Urbano, then aged sixteen years and two months, in the course of armed robbery, killed Harry Abelowitz of Revere. On December 20, 1954, the District Court of Chelsea declined jurisdiction.[1] On January 12, 1955, the grand jury indicted D'Urbano for first degree murder and lesser offences. On May 5, 1955, a judge of the Superior Court accepted a plea of guilty to murder in the second degree and sentenced D'Urbano to life imprisonment. On March 9, 1959, in *Metcalf* v. *Commonwealth*, 338 Mass. 648, we held that, upon an indictment in 1956 for murder in the first degree against a child who was under fourteen at the time he committed the offence, an accepted plea of guilty of murder in the second degree established that the child was guilty only of conduct constituting delinquency within G. L. c. 119, §§ 52–63. On May 12, 1959, D'Urbano filed a writ of error in the county court, assigning as error that he was under seventeen years of age when the crimes charged were committed and was therefore, following the acceptance of his plea, subject to the special requirements of G. L. c. 119, §§ 61 and 74.

On November 12, 1959, a single justice, citing the *Metcalf* decision, reversed the judgment of the Superior Court and ordered that further proceedings be instituted. On November 20, 1959, a judge of the Superior Court revoked D'Urbano's life sentence. On the same day D'Urbano was complained of as a delinquent child in the District Court of Chelsea. That complaint was dismissed under G. L. c. 119, § 61,[2] on the ground that "because of the boy's age, the fact that he had been incarcerated at Walpole and had associated with mature and hardened criminals, it would not be in his best interests or in the interests of the Commonwealth

[1] The juvenile procedures of c. 119 prior to St. 1960, c. 353, were inapplicable where the offence was punishable by death. The 1960 amendment struck this limitation from the statute.

[2] "If it be alleged in a complaint made under sections fifty-two to sixty-three, inclusive, that a child between fourteen and seventeen years of age has committed an offence against a law of the commonwealth, or has violated a city ordinance or town by-law, and the court is of opinion that his welfare, and the interests of the public, require that he should be tried for said offence or violation, instead of being dealt with as a delinquent child, the court may, after a hearing on said complaint, order it dismissed."

to commit him to the custody of the youth service board."
Thereupon, D'Urbano was arraigned in the District Court
and bound over to the Superior Court.

On December 11, 1959, the grand jury returned the indict-
ment for second degree murder, and on January 28, 1960, a
judge of the Superior Court accepted D'Urbano's plea of
guilty to manslaughter and sentenced him to the Massachu-
setts Correctional Institution at Walpole for a term of
eighteen to twenty years. On January 28, 1960, also, the
1954 indictment for murder in the first degree was dis-
missed. D'Urbano filed this petition for a writ of error on
December 20, 1960.

In the proceedings in the Superior Court in 1955 and in
1959-1960, and in the District Court in 1959, D'Urbano was
represented by counsel.

1. We agree with D'Urbano's contention that G. L.
c. 119 does not give the District Court power to commit an
adult to the Youth Service Board or indeed to exercise
jurisdiction over an adult in its juvenile session.

The statute is concerned exclusively with children. Sec-
tion 53 declares the purpose that "[s]ections fifty-two to
sixty-three, inclusive, shall be liberally construed so that
the care, custody and discipline of the children brought be-
fore the court shall approximate as nearly as possible that
which they should receive from their parents, and that, as
far as practicable, they shall be treated, not as criminals,
but as children in need of aid, encouragement and guidance.
Proceedings against children under said sections shall not
be deemed criminal proceedings." The statute (§§ 52–83)
refers repeatedly and, with three inconsequential excep-
tions,[3] exclusively, to "child" or "children." See also
G. L. c. 120, § 16, which requires the Youth Service Board
to discharge every person committed as a wayward or de-

---

[3] Section 69A provides: "When a person has been committed to the youth
service board . . . [various named and] other public officials shall make avail-
able to said board all pertinent information . . . ." (emphasis supplied). The
form of warrant of commitment prescribed in § 77 begins: "Whereas, (name
of person committed) . . . a boy (or girl) between seven and seventeen (or
eighteen) years of age . . ." (emphasis supplied). Section 69 refers to
records of a school "pupil."

D'Urbano v. Commonwealth.

linquent child on his twenty-first birthday[4] unless special proceedings are had because the person is deemed dangerous. See c. 120, §§ 17–20.

The statute, primarily, prescribes procedures in juvenile sessions for children under seventeen years of age. Section 52 defines a "delinquent child" as "a child between seven and seventeen who violates any city ordinance or town by-law or commits [any offence against a law of the commonwealth]."[5] Section 73 provides: "In criminal proceedings under the following sections, district courts . . . may commit children under seventeen years of age to the custody of the youth service board."

Limited jurisdiction over juveniles who have passed their seventeenth birthday is provided in § 72, but it remains expressly only jurisdiction in respect of "children." There is no provision which in terms gives jurisdiction over a child apprehended when under seventeen and not brought to trial until after eighteen. There are indications that jurisdiction ends when the child attains eighteen but it is not necessary in this case to make that construction.

The first sentence of § 72 provides: "Courts may continue to exercise jurisdiction in their juvenile sessions over children who become seventeen years of age or who pass the age limit for bringing the kind of complaint or proceeding before the court, pending adjudication on their cases, or during continuances or probation, or after their cases have been placed on file, or where a child between the ages of sixteen and seventeen commits an offence and is not apprehended until after reaching the age of seventeen the court may deal with said child in the same manner as if he or she had not reached the age of seventeen, and all provisions and rights applicable to a child under seventeen shall apply to said child."[6] But this extension is carefully limited in

---

[4] The age for discharge of persons committed after conviction in criminal proceedings is twenty-three. (Ibid.)

[5] Prior to St. 1960, c. 353, § 1, in place of the bracketed words were these: "an offence not punishable by death."

[6] The omission of a similar provision for offences committed between fourteen and sixteen suggests that a one year extension of the seventeen year limit is all that is intended. See also c. 119, § 83: "A boy between fourteen and eighteen convicted in the superior court . . . may be committed to the custody of the youth service board until he becomes twenty-three years of age . . . ."

D'Urbano v. Commonwealth.

these words: ''Nothing herein shall authorize the commitment of any child over seventeen years of age to the youth service board, or *give any court any power or authority over said children after they become eighteen years of age,* except that, on the revocation of the suspension of the execution of a sentence or order of commitment, such sentence or order of commitment may be executed, notwithstanding that the child sentenced or ordered committed has passed the age limit for commitment to the youth service board to which he was sentenced or ordered committed, or when a child between the ages of sixteen and seventeen commits an offence and is not apprehended until after reaching the age of seventeen the court may commit such child to the youth service board or to any other institution to which he might be committed for such violation of law'' (emphasis supplied).[7]

The Supreme Court of New Jersey has held, under a statute in many respects like ours, that an adult who, as a child, had been illegally denied juvenile procedures is to be dealt with by the juvenile court. *In the Matter of Smigelski,* 30 N. J. 513, 520–523, and cases cited. But see *Application of Johnson,* 178 F. Supp. 155 (D. N. J.), for an asserted constitutional limitation in respect of an adult of twenty-seven years. We do not find in our statute the implications on which the New Jersey decision is based, nor, on our construction, a constitutional issue.

We recognize that this construction means that there is no remedial or punitive procedure available for a boy who commits an offence at thirteen, and is not apprehended or validly proceeded against until after he has passed the age

---

[7] The changes recommended by the advisory committee on service to youth in its annual report for 1962 (House Bill No. 3390) appear to recognize and to be designed to continue the absence of any grant of jurisdiction to apply juvenile procedures to an adult. These changes would expressly declare that jurisdiction of a juvenile court over a child ends with his eighteenth birthday except that in the case of ''any person'' who commits an offence prior to his seventeenth birthday and is not apprehended until after his eighteenth birthday the court would have jurisdiction to discharge such person (''such discharge . . . [being] consistent with the protection of the public'') and otherwise to dismiss the juvenile complaint. Even if amended as suggested, there would be no provision for the case of a person apprehended while a juvenile and not validly proceeded against until after he became an adult.

D'Urbano v. Commonwealth.

at which he may be dealt with as a delinquent. See *Metcalf v. Commonwealth*, 338 Mass. 648. This gap in the statute and other uncertainties therein are, however, properly for legislative consideration. The question did not arise in the *Metcalf* case, Metcalf having been under seventeen when it was decided.

2. The absence of valid juvenile procedures did not deprive the Superior Court of jurisdiction.

General Laws c. 119, § 74, provides: "Criminal proceedings shall not be begun against any child between fourteen and seventeen years of age [except for offences punishable by death[8]] unless proceedings against him as a delinquent child have been begun and dismissed as required by section sixty-one." This section is in terms applicable only if the defendant is a child. Nothing in § 72 extends § 74 to proceedings against an adult. No implication so extends it. The statute does not intend, for example, that a person who committed murder at sixteen and is apprehended at twenty-three should be beyond the reach of criminal statutes.

3. D'Urbano contends that the statutory construction adopted in *Hurd v. Commonwealth*, Supreme Judicial Court for Suffolk County, No. 59,193 (March 16, 1960), would require criminal proceedings in the District Court under §§ 73–83, with a finding of guilt, as a jurisdictional prerequisite to indictment in the Superior Court. But whatever the jurisdictional requirement of these sections, when applicable, § 75 shows that they are inapplicable in cases such as this, where the District Court has no jurisdiction under § 61. Section 75 begins: "Upon complaint against any child between fourteen and seventeen years of age *against whom proceedings have been begun and dismissed as required by section sixty-one* . . ." (emphasis supplied).

4. D'Urbano is not aided by the principle which bars double jeopardy.

Even where there has been an illegal trial in a court having jurisdiction, the defendant who establishes the fact on a writ of error may be retried. *Commonwealth v. Gallo,*

---

[8] Deleted by St. 1960, c. 353, § 3.

344 Mass. 453, 455–456 and cases cited. *Hicks* v. *Commonwealth, ante,* 89, 91. See *In the Matter of Smigelski,* 30 N. J. 513, 525 ("The defense is not available because by his own initiative Smigelski caused his previous plea and sentence to be set aside"). The retrial may be upon the same or a new indictment. *United States* v. *Ball,* 163 U. S. 662, 672. See *Commonwealth* v. *Fraher,* 126 Mass. 265. In this case there was no prior trial; the only adjudication in the Superior Court in 1955 was made before trial began and before a jury had been empanelled. See *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 18–19. It was, in effect, only an adjudication that the case had no criminal aspect pending a decision in the juvenile session of the District Court under G. L. c. 119, § 61. Hence D'Urbano in 1955 was not in jeopardy. See *Commonwealth* v. *Peters,* 12 Met. 387, 396–397; *Commonwealth* v. *Farrell,* 105 Mass. 189, 191; *Commonwealth* v. *Fraher,* 126 Mass. 265; *Commonwealth* v. *Mahoney,* 331 Mass. 510, 513–514.

5. There is nothing in D'Urbano's contention that he has been unconstitutionally deprived of a speedy trial. Prompt trial of the issue of guilt was pending in 1955. It was ended, as a lawful proceeding, by the acceptance of D'Urbano's plea. That plea "defined his offence," at least for the proceedings in the District Court which would undoubtedly have followed seasonably had the requirements of the statute been understood. *Metcalf* v. *Commonwealth,* 338 Mass. 648, 653. We assume, but do not decide, that, notwithstanding the plea of guilty to murder in the second degree in 1955, D'Urbano could have pleaded not guilty to that offence as charged in the new 1959 indictment and thus subjected himself to a trial five years after the offence. Had he done so he would not have been harmed by any act or omission of the Commonwealth. In any event D'Urbano did not seek by a trial in 1960 to establish innocence of the once admitted offence, and the issue remained in substance what it was after the plea in 1955, namely, what should be the consequences to D'Urbano of the admitted offence.

6. D'Urbano's basic contention is that it is unjust that, because the true construction of G. L. c. 119 was not under-

stood while he was subject to the juvenile procedures, he has been forever deprived of the possibility that they would be applied to him.

It may be that there was small chance that D'Urbano would have been committed to the Youth Service Board in 1954 because of the nature of his offence and other circumstances. But the chance, nevertheless, had to do with matters of grave importance. The decision of a judge that a juvenile offender should be dealt with as a delinquent child means that the child will have the opportunity of rehabilitation under the care and guidance of the Youth Service Board (G. L. c. 119, § 58; c. 120), will have no criminal record (G. L. c. 119, § 53), will not be disqualified from public service (G. L. c. 119, § 60), and will be discharged at twenty-one years of age unless there is then a finding that his discharge would be physically dangerous to the public (G. L. c. 120, §§ 16, 17).

D'Urbano's contention that because of the loss of juvenile jurisdiction he should be discharged overlooks the fact that this loss, through lapse of time, is no more chargeable to the Commonwealth than it is to him. Both assumed, not unreasonably (see *Metcalf* v. *Commonwealth*, 338 Mass. 648, 653), that the Superior Court in 1955 had jurisdiction to sentence D'Urbano after the plea. But it was open to D'Urbano, then represented by counsel, to have raised in 1955 the issue which Metcalf later raised. It was not incumbent upon the Commonwealth to do so. In the circumstances the right of the public is equal to D'Urbano's. That right, at least, is to have corrective measures applied to him and, in the meantime, to be protected from the risk of his acts out of custody. Even if D'Urbano had been seasonably committed to the Youth Service Board, he would have been subject to its correctional and rehabilitative control and direction until he attained the age of twenty-one years. If the board should then have been of the opinion that his discharge would have been "physically dangerous to the public" his release then or thereafter would have been subject to court determination that it would not be physically

dangerous to the public to discharge him. G. L. c. 120, §§ 16, 17, 18.

The statutory procedures for indictment, conviction, sentence, and confinement are, as noted, the only procedures under which the public right may be enforced against D'Urbano as an adult.

A sentence for manslaughter necessarily involves punishment. For reasons already stated, however, D'Urbano may not ask to escape from punishment at the price of the loss of the public right. It follows that it was not error to indict D'Urbano, accept his plea, and sentence him.

A number of decisions in cases where the petitioner was deprived of a juvenile proceeding do not deal with proceedings after reversal of the first judgment. See, e.g., *Wade v. Warden of State Prison*, 145 Maine, 120; *Mattingly v. Kentucky*, 171 Ky. 222; *Albiniano for Habeas Corpus Writ*, 62 R. I. 429. For a suggestion contra to our holding see Rappeport, Determination of Delinquency in the Juvenile Court: A Suggested Approach, Washington Univ. L. Q. (1958) 123, 141.

7. Although the foregoing is a sufficient answer to the petition for writ of error we note that it does not appear that D'Urbano was prejudiced by being sentenced in 1960 before our construction of the statute. True, the sentencing judge had reason to suppose that the District Court had validly adjudged that D'Urbano was not a fit subject for commitment to the Youth Service Board. But it does not follow that when he imposed sentence the judge had not considered the adverse effect on D'Urbano of the invalid sentence of 1955.

In the District Court in 1959 D'Urbano's counsel so spoke as to show that he agreed with the view of the District Court judge. The plea of manslaughter in the Superior Court was accepted while the same counsel represented D'Urbano. It is reasonable to assume that counsel brought to the attention of the Superior Court judge the circumstances relevant to acceptance of a plea to a lesser offence and to disposition, particularly the District Court judge's stated reasons for

dismissing the delinquency complaint which showed that the failure correctly to apply the law to D'Urbano had, in effect, foreclosed the possibility that the District Court judge would deal with D'Urbano as a delinquent child. It is reasonable to assume also that the judge in the Superior Court had in mind G. L. c. 119, § 83, and that, had D'Urbano been before him for sentencing when he was under eighteen years of age and before serving a part of the 1955 sentence, § 83 would surely have permitted and the circumstances might have justified a commitment by the Superior Court to the Youth Service Board rather than a sentence. We may assume that all such considerations, as well as the need for protection of the public interest, were carefully weighed by the judge. The sentence of from eighteen to twenty years does not necessarily imply an emphasis upon punishment. Although the maximum sentence for manslaughter is twenty years (G. L. c. 265, § 13) and the minimum term of eighteen years means that there can be no release by the parole board until D'Urbano had served two thirds of that term less good behavior time, considerations of protection and correction alone could have pointed to a sentence which would require that D'Urbano be in custody for at least that period.

8. It is not unjust in all the circumstances that D'Urbano's release should now, subject to the statutory requirements in respect of minimum time to be served, rest with the parole board whose duty it is to determine if and when convicted persons may appropriately be released. See G. L. c. 127, § 130. We think it may be expected that the board will take note of the unusual circumstances of the case.

*Judgment affirmed.*