COMMONWEALTH *vs.* A JUVENILE.

Suffolk. February 14, 1983. — June 24, 1983.

Present: GRANT, PERRETTA, & WARNER, JJ.

*Juvenile Court,* Jurisdiction. *Superior Court,* Jurisdiction. *Statute,* Construction. *Jurisdiction,* Delinquent child, Transfer hearing. *Delinquent Child. Practice, Criminal,* Probable cause hearing, Transfer hearing, Juvenile delinquency proceedings.

A Juvenile Court had jurisdiction pursuant to the provisions of G. L. c. 119, § 72A, to bind over to the Superior Court, after his eighteenth birthday, a defendant who had been originally apprehended before he was seventeen years old, later defaulted after his probable cause hearing, and then was apprehended again on a default warrant after he was eighteen years old. [253-257]

Where a Juvenile Court judge made insufficient subsidiary findings to support a transfer order with respect to the statutory finding that the defendant presented a significant danger to the public, the Superior Court was directed to request the Juvenile Court to revise its findings in support of its order, in light of the Supreme Judicial Court's decisions in *A Juvenile* v. *Commonwealth (No. 1),* 380 Mass. 552 (1980), and *Two Juveniles* v. *Commonwealth,* 381 Mass. 736 (1980). [257-259]

INDICTMENT found and returned in the Superior Court Department on September 21, 1981, following a transfer hearing in the Boston Division of the Juvenile Court Department before *Cashman, J.*

A motion to dismiss the indictment was heard by *Connolly, J.*

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

*Susan G. Kauffman* for the defendant.

WARNER, J. The Commonwealth appeals from the dismissal by the Superior Court of an indictment charging the defendant with armed robbery.[1] The indictment was dis-

[1] The appeal is authorized by G. L. c. 278, § 28E. See also Mass.R. Crim.P. 15(b)(1), 378 Mass. 883 (1979).

missed on the ground that the Boston Juvenile Court lacked jurisdiction under G. L. c. 119, §§ 61, 72 and 72A, to bind the defendant over to the Superior Court after his eighteenth birthday, and on the alternative ground that the Juvenile Court findings in support of the transfer were insufficient.

The defendant was arrested on October 2, 1979, when he was sixteen years and eleven months old,[2] for the crime[3] later charged in the indictment. After the arrest, the Juvenile Court held a probable cause hearing on November 5, 1979, in accordance with the provisions of G. L. c. 119, § 61; probable cause was found, and the case was continued for a transfer hearing under § 61. After several continuances the defendant defaulted on August 12, 1980, when he was seventeen years and nine months old, and was again apprehended on July 22, 1981, when he was eighteen years and eight months old. On August 12, 1981, a transfer hearing was held in the Juvenile Court, pursuant to § 61, and the judge concluded that the defendant should be bound over to the Superior Court "[b]ecause of his age and number of offenses, and because he is not amenable to the Juvenile Justice System." On the same day a criminal complaint issued and, on September 21, 1981, a grand jury returned the indictment for armed robbery.

In dismissing the indictment the Superior Court judge ruled that the Juvenile Court had no authority over the defendant after he reached his eighteenth birthday. The

---

[2] The defendant was born on November 13, 1962.

[3] "[A]n act which is against the criminal law of the Commonwealth is a criminal act at the time of its commission when it is committed by a juvenile between the ages of fourteen and seventeen." *Stokes* v. *Commonwealth,* 368 Mass. 754, 772 (1975).

judge concluded that G. L. c. 119, § 72,[4] determined the outcome of the case, and that § 72A[5] did not apply.

1. Section 72 applies to juveniles who commit offenses prior to their seventeenth birthdays but whose cases are not finally adjudicated until the time between their seventeenth and eighteenth birthdays. The last sentence of the section makes clear that it gives no power or authority to the Juvenile Court over persons who have attained their eighteenth birthdays. *D'Urbano* v. *Commonwealth*, 345 Mass. 466, 470-471 (1963). Section 72A, however, grants power and authority to the Juvenile Court over persons who have attained their eighteenth birthdays if they committed offenses prior to their seventeenth birthdays but were not apprehended until after they became eighteen years old. The Superior Court construed the term "apprehended" in § 72A

---

[4] General Laws c. 119, § 72 (as amended by St. 1978, c. 478, § 65), reads as follows: "Courts shall continue to have jurisdiction in their juvenile sessions over children who attain their seventeenth birthday pending adjudication of their cases, or pending hearing and determination of their appeals, or during continuances or probation, or after their cases have been placed on file; and if a child commits an offense prior to his seventeenth birthday, and is not apprehended until between his seventeenth and eighteenth birthdays, the court shall deal with such child in the same manner as if he had not attained his seventeenth birthday, and all provisions and rights applicable to a child under seventeen shall apply to such child. Nothing herein shall authorize the commitment of a child to the department of youth services after he has attained his eighteenth birthday, or give any court in its juvenile session any power or authority over a child after he has attained his eighteenth birthday."

[5] General Laws c. 119, § 72A (as inserted by St. 1975, c. 840, § 2), reads as follows: "The case of any person who commits an offense or violation prior to his seventeenth birthday, and who is not apprehended until after his eighteenth birthday, shall be heard and determined in accordance with sections fifty-three to sixty-three, inclusive. In any such case, the court, after a hearing shall determine whether there is probable cause to believe that said person committed the offense as charged, and shall, in its discretion, either order that the person be discharged, if satisfied that such discharge is consistent with the protection of the public; or shall order that the complaint be dismissed, if the court is of the opinion that the interests of the public require that such person be tried for such offense or violation instead of being discharged. Said hearing shall be held prior to, and separate from, any trial on the merits of the charges alleged."

to mean the original arrest on the charge and, therefore, concluded that since the defendant had been apprehended prior to his eighteenth birthday, the Juvenile Court had no jurisdiction over him after he became eighteen years old.

If the Superior Court judge's construction of § 72A is correct, a gap exists which would require the dismissal of the indictment and result in the defendant's being free of any possibility of criminal prosecution, a result which would flow directly from his default. This would follow from G. L. c. 119, § 74, as inserted by St. 1967, c. 787, which provides in relevant part: "[N]o criminal proceeding shall be begun against any person who prior to his seventeenth birthday commits an offense against the law of the commonwealth or who violates any city ordinance or town by-law, unless proceedings against him as a delinquent child have, been begun and dismissed[6] as required by section sixty-one or seventy-two A."

2. In construing the relevant statutes, we recognize that we cannot fill a gap if the statutes clearly contain such a gap. "It is the function of the court to construe . . . statute[s] as written and an event or contingency for which no provision is made does not justify judicial legislation." *First Natl. Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 151 (1982), quoting *Prudential Ins. Co. of America* v. *Boston*, 369 Mass. 542, 547 (1976). See *D'Urbano* v. *Commonwealth*, *supra* at 471-472; *County of Middlesex* v. *Newton*, 13 Mass. App. Ct. 538, 543 (1982). If, however, the language of the statutes is "fairly susceptible to a construction that would lead to a logical and sensible result," *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 489 (1941), we will construe them so "as to make [them] . . . effectual piece[s] of legislation in harmony with common sense and sound reason." *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 492 (1932). *Massachusetts Commn. Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976). See *Curran, petitioner*, 314 Mass. 91, 95 (1943).

---

[6] The effect of a dismissal is that the person is bound over to the Superior Court.

Prior to the enactment of G. L. c. 119, § 72A, the Supreme Judicial Court held, in *D'Urbano* v. *Commonwealth*, 345 Mass. at 472, that a person who as an adult had been bound over to the Superior Court after an invalid Juvenile Court hearing under G. L. c. 119, § 61, nevertheless came under the independent criminal jurisdiction of the Superior Court. "The absence of valid juvenile procedures did not deprive the Superior Court of jurisdiction." *D'Urbano*, at 472.

General Laws c. 119, § 74, as inserted by St. 1948, c. 310, § 12, as it read at the time of the events in *D'Urbano*, provided: "Criminal proceedings shall not be begun against any *child* between fourteen and seventeen years of age, except for offences punishable by death, unless proceedings against him as a delinquent child have been begun and dismissed as required by section sixty-one" (emphasis added). In *D'Urbano*, the court held that this provision was not applicable to D'Urbano because it was "in terms applicable only if the defendant is a child." *D'Urbano, supra* at 472. However, § 74 was amended by St. 1964, c. 308, § 6, to provide: "Criminal proceedings shall not be begun against any *person* who prior to his seventeenth birthday commits an offense against the law of the commonwealth or who violates any city ordinance or town by-law, unless proceedings against him as a delinquent child have been begun and dismissed as required by section sixty-one or seventy-two A" (emphasis added).[7] Of significance here is the change of "child" to "person" and the reference to § 72A, which was inserted in an earlier section of the same act, St. 1964, c. 308, § 4. It seems clear that by the insertion of § 72A and the amendment of § 74, the Legislature intended that criminal proceedings, with exceptions not here relevant, not be begun against a person of any age who has committed a crime as a juvenile (between the ages of fourteen and seventeen — § 61), unless there has been a determination under § 61 or § 72A (as will be seen below, using criteria prescribed by § 61) by the Juvenile Court that such proceedings would be appropriate.

---

[7] Except for an amendment by St. 1967, c. 787, which is not relevant here, the language of the current § 74 is the same.

3. The effect of G. L. c. 119, § 72A, is to provide more beneficial treatment for persons over eighteen years old who commit crimes while under seventeen years old than would be accorded persons who commit crimes after their seventeenth birthdays. Where it applies, § 72A provides for a hearing which permits the Juvenile Court, in its discretion, the alternative of ordering that the accused be discharged if it is "satisfied that such discharge is consistent with the protection of the public" instead of binding the accused over to the Superior Court. To construe § 72A liberally, as we must under G. L. c. 119, § 53,[8] means to construe it, consistent with its terms and the apparent legislative intent, to provide greater inclusiveness of its benefits.[9] It is not, as the defendant contends, a criminal statute to be narrowly or strictly construed.

The defendant's argument that § 72A applies only when a person is *originally* apprehended after his eighteenth birthday is based upon the requirement that a probable cause hearing be held after the person is apprehended. Where, as here, the defendant defaulted after his probable cause hearing, his subsequent apprehension could not, according to this argument, be the "apprehension" referred to in the statute. This consideration, however, is inconclusive. It is unlikely that the Legislature intended to treat differently, for example, a person who, on the one hand, is origi-

[8] Section 72A provides that cases of persons subject to its provisions are to be heard and determined in accordance with §§ 53 through 63 of c. 119. Section 53 provides: "Sections fifty-two to sixty-three, inclusive, shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance. Proceedings against children under said sections shall not be deemed criminal proceedings." While considered alone, § 53 deals with the treatment of children when they are children, its application to § 72A proceedings indicates a legislative intent, at least with respect to the consideration of discharge, that the liberal construction expressed should be applied.

[9] "[W]hat is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction." 2A Sands, Sutherland Statutory Construction § 58.02, at 464 (4th ed. 1973).

nally apprehended at age sixteen, escapes from custody or defaults prior to his probable cause hearing, and is apprehended after his eighteenth birthday, and a person who, on the other hand, is originally apprehended at age sixteen, escapes from custody or defaults after his probable cause hearing, and is again apprehended after his eighteenth birthday. In the latter situation, the fact that a probable cause hearing has already been held, preceding an escape or default and prior to subsequent apprehension, does not change the meaning or applicability of the statute. The Legislature could not have intended to bestow a reward for escape or default. We hold that § 72A was meant to apply to a person such as the defendant, who was originally apprehended before he was seventeen, later defaulted, and then apprehended again on a default warrant after he was eighteen. We thus construe "apprehended" as used in § 72A to mean that a person is taken into custody and available to the Juvenile Court for disposition of the case against him.[10]

4. Section 72A expressly makes applicable to the hearing and determination of a case of any person coming within its provisions the requirements of G. L. c. 119, § 61.

Under § 61, as inserted by St. 1975, c. 840, § 1, a transfer hearing must be held, and a juvenile cannot be bound over to the Superior Court unless the judge enters two written findings, based upon clear and convincing evidence, (1) that "the child presents significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, if any," and (2) that the child "is not amenable to rehabilitation as a juvenile." The second finding is not relevant in terms to a § 72A determination.

To support these written findings, the judge must also consider at least five factors: "(*a*) the seriousness of the alleged offense; (*b*) the child's family, school and social

---

[10] The suggestion in the last sentence of n.7 in *D'Urbano* does not require a different conclusion. *D'Urbano, supra* at 471.

history, including his court and juvenile delinquency record, if any; (*c*) adequate protection of the public; (*d*) the nature of any past treatment efforts for the child; and (*e*) the likelihood of rehabilitation of the child" (G.L. c. 119, § 61), as supplemented by decisions of the Supreme Judicial Court. *Two Juveniles* v. *Commonwealth*, 381 Mass. 736, 740-741 & n.4 (1980). The first four of the factors are relevant considerations under § 72A. The fifth factor would be relevant to the extent that the "likelihood of rehabilitation" has a broader application than "amenab[ility] to rehabilitation as a juvenile" and includes whatever rehabilitation may have occurred prior to the time of the hearing. Under § 61, although the judge need not make written findings concerning each of these five factors, there must be "subsidiary findings indicating the basis for his conclusions concerning the two statutorily required findings." *Two Juveniles* v. *Commonwealth, supra* at 741-742.

Here the Juvenile Court judge made the two statutorily required findings (even though the "amenable to rehabilitation" finding technically was not relevant to one over eighteen), but his subsidiary findings indicating the basis for his conclusion are deficient. The judge described the defendant's delinquency record and the nature of the alleged offense. Then he concluded, "The background and history of this defendant is plainly indicative of continuous recidivistic behavior, the kind and nature of which makes him a continuing danger to the community at large." There were no findings pertaining to the defendant's family, school or social history or to the nature of any past treatment efforts (cf. *Two Juveniles* v. *Commonwealth, supra* at 743-744), even though, according to the findings of the Superior Court judge, there was "information before the [Juvenile Court] from the juvenile's guidance advisor which demonstrated that the juvenile returned to school and worked part-time while his case was continued for [transfer] proceedings." The findings of the Juvenile Court judge fall far short of expressing "the judge's reasons in fair detail and with logical cohesion." *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 563 (1980).

5. The proper disposition in the circumstances is not dismissal of the indictment but a remand to the Superior Court. See A *Juvenile* v. *Commonwealth (No. 1), supra* at 562-563. Accordingly, we direct the Superior Court to request the Juvenile Court to revise its findings and order of August 12, 1981, in light of the teachings of A *Juvenile* v. *Commonwealth (No. 1), supra,* and *Two Juveniles* v. *Commonwealth, supra,* and the cases cited therein. These steps should be taken promptly. The order dismissing the indictment is reversed. The indictment remains in place provisionally. A *Juvenile,* 380 Mass. at 562.

In A *Juvenile* v. *Commonwealth (No. 1), supra* at 562-563, the Supreme Judicial Court said, "If it should appear from revised findings that a case for transfer was not made, the [defendant] will be entitled on motion in the Superior Court to a dismissal of the indictment; if adequate revised findings indicate otherwise, the indictment will stand and the case will proceed to trial." In that case no question was raised as to the application of § 72A.

Here, under § 72A the Juvenile Court retains jurisdiction until it has made a valid discharge or bound the defendant over to the Superior Court. Consequently, when this case is sent back to it, the Juvenile Court may either revise its findings in support of its order of August 12, 1981, or order that the defendant be discharged in accordance with the provisions of § 72A. If revised findings are submitted, they may be challenged in the Superior Court by a motion to dismiss the indictment. G. L. c. 277, § 47A. If adequate revised findings support a transfer, the indictment will stand, and the case will proceed to trial. Because the Juvenile Court retains jurisdiction under § 72A, a nunc pro tunc hearing (see A *Juvenile* v. *Commonwealth [No. 1], supra* at 563) is not dictated. The Juvenile Court may consider evidence previously offered, and may hold such hearings as may be appropriate and admit new evidence on the question whether the defendant should be discharged or bound over to the Superior Court.[11]

---

[11] The Juvenile Court judge who entered the original findings has retired but has been recalled. By the terms of the order of designation and

The case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

assignment of the Chief Administrative Justice of the Trial Court, the judge is authorized to perform the duties of a judge of the Juvenile Court Department.