## COMMONWEALTH *vs.* JAMAL DAVIS.

No. 02-P-402.

Suffolk. September 5, 2002. - November 8, 2002.

Present: GRASSO, KANTROWITZ, & COWIN, JJ.

*Practice, Criminal,* Findings· by judge, Probable cause hearing, Transfer hearing, Juvenile delinquency proceeding. *Juvenile Court,* Jurisdiction. *Jurisdiction,* Delinquent child, Transfer hearing. *Delinquent Child.*

A Juvenile Court judge's failure to make written subsidiary findings when deciding whether the defendant, who allegedly committed an offense prior to his seventeenth birthday but was not apprehended until after his eighteenth birthday, could be prosecuted as an adult, did not warrant dismissal of an indictment charging the defendant with murder in the first degree, where the judge was not required by G. L. c. 119, § 72A, to make written subsidiary findings, and where the record supported the judge's determination of probable cause and her exercise of discretion to authorize prosecution of the defendant as an adult. [414-417]

INDICTMENT found and returned in the Superior Court Department on December 16, 1999.

A question of law was reported by *Peter M. Lauriat,* J.

*Jeremy C. Bucci,* Assistant District Attorney *(Edmond J. Zabin,* Assistant District Attorney, with him) for the Commonwealth.

*Matthew A. Kamholtz* for the defendant.

GRASSO, J. Before us is a reported question from the Superior Court that involves whether G. L. c. 119, § 72A, requires a Juvenile Court judge to make written subsidiary findings when deciding whether an individual who commits an offense prior to his seventeenth birthday but is not apprehended until after his eighteenth birthday may be prosecuted as an adult. The question arises in the following context.

*Background.* On the afternoon of January 16, 1990, Lawrence

Searcy was shot to death in front of a dry cleaning business in the Roxbury area of Boston. An eyewitness, Lillian Belcher, saw the gunman shoot Searcy once in the back and then stand over Searcy's prone body and pump seven or eight more bullets into Searcy as he lay on the ground. In 1999, Belcher identified Jamal Davis, then twenty-five years old, as the shooter.[1] On April 12, 1999, the Roxbury Juvenile Court issued a delinquency complaint charging Davis with Searcy's murder.[2] Pursuant to G. L. c. 119, § 72A, a Juvenile Court judge conducted a hearing to determine whether Davis should be prosecuted as an adult or discharged. The Commonwealth and the defendant each presented witnesses and had the opportunity to be heard upon whether (1) there was probable cause to believe that Davis had committed Searcy's murder; and (2) in the exercise of her discretion, the judge could conclude that, consistent with the protection of the public, Davis should be discharged, or whether the interests of the public required that Davis be prosecuted as an adult.[3]

The Commonwealth contended that Belcher's testimony established probable cause to believe that Davis had murdered Searcy and that, given the barbarous nature of the crime, it was inconceivable that prosecution of the perpetrator was not in the

[1]Davis was born in May, 1973, making him less than seventeen years old at the time of Searcy's murder.

[2]See G. L. c. 119, § 74, which provides in pertinent part that "no criminal proceeding shall be begun against any person who . . . commits" an offense while still a juvenile unless proceedings against him as a delinquent child have been begun and dismissed under G. L. c. 119, § 72A.

[3]General Laws c. 119, § 72A, as in effect prior to St. 1996, c. 200, § 13A, provides, "The case of any person who commits an offense or violation prior to his seventeenth birthday, and who is not apprehended until after his eighteenth birthday, shall be heard and determined in accordance with sections fifty-three to sixty-three, inclusive. In any such case, the court, after a hearing shall determine whether there is probable cause to believe that said person committed the offense as charged, and shall, in its discretion, either order that the person be discharged, if satisfied that such discharge is consistent with the protection of the public; or shall order that the complaint be dismissed, if the court is of the opinion that the interests of the public require that such person be tried for such offense or violation instead of being discharged. Said hearing shall be held prior to, and separate from, any trial on the merits of the charges alleged."

interests of the public.[4] The Commonwealth's presentation focused upon "the interests of the public" and rested solely upon the facts and circumstances of the crime. The Commonwealth presented no evidence bearing specifically upon the correlative question of whether Davis's discharge was "consistent with the protection of the public."

For his part, Davis maintained that (1) the Commonwealth had failed to establish probable cause because it was predicated upon a suspect identification by Belcher, whose credibility was questionable,[5] and (2) the weakness of the Commonwealth's case, together with the slipshod nature of the Commonwealth's investigation, the staleness of the case, and the loss of potentially exculpatory evidence, put the defendant in an untenable position that made further prosecution not "in the interest of justice." Like the Commonwealth, Davis presented no evidence bearing upon whether his discharge was "consistent with the protection of the public."

At the conclusion of the hearing, the judge stated, "I find that there is probable cause and that the interest of justice [*sic*] would be served by having this case sent to the adult court." The judge made no written subsidiary findings to support her decision.

After a grand jury indicted the defendant for murder in the first degree, the Juvenile Court dismissed the delinquency complaint. In Superior Court, Davis moved to dismiss the indictment, asserting both that the evidence before the grand jury was insufficient, see *Commonwealth* v. *McCarthy*, 385 Mass. 160, 162-163 (1982), and that the Superior Court lacked jurisdiction because the Juvenile Court judge had failed to make statutorily required written findings. As relevant to this action, the focus in Superior Court was upon whether the version of G. L. c. 119,

---

[4]The prosecutor maintained that "it would be inconceivable . . . that it would not be in the interest of justice that someone responsible for such a barbarous act be brought to justice. . . . [T]he act alone calls out for justice. . . . The interests of justice are served by this matter being resolved one way or another by a jury in an adult court."

[5]The defense developed evidence that Belcher, who was on probation for a drug offense at the time of the hearing, had provided information to the government on other cases beginning in 1992, but did not identify Davis as the shooter until 1999.

§ 72A, in effect at the time of Searcy's murder or a 1996 amendment governed the defendant's case, and whether applying the latter version would violate the ex post facto clause of the United States Constitution.[6] The Superior Court judge decided that the earlier version of G. L. c. 119, § 72A, not the amended version, governed Davis's case and required written findings.[7] He remanded to the Juvenile Court "for the required written findings." See *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 562 n.13 (1980) ("Whether or not technically a 'remand,' the order was in essence a request for further enlightenment to enable the judge to rule justly on the . . . motion"); *Commonwealth* v. *A Juvenile*, 16 Mass. App. Ct. 251, 259 (1983) (Superior Court is to "request the Juvenile Court to revise its findings").

When written findings did not materialize from the Juvenile Court judge, the defendant renewed his motion to dismiss in Superior Court.[8] A second Superior Court judge then reported this question:

> "Whether, in the circumstances of this case, the indictment charging Jamal Davis with murder must be dismissed where the Juvenile Court has failed to make written findings, in compliance with G. L. c. 119, § 72A, to support its determination that (1) probable cause existed to believe that Jamal Davis committed the offense charged of murder, and (2) that the interests of the public require that Jamal Davis be tried for this crime rather than released."

We answer the reported question, "No." Where written subsidiary findings are not required by G. L. c. 119, § 72A, and

---

[6]The version of § 72A in effect at the time of Searcy's murder in 1990 incorporated the provisions of §§ 53-63 of G. L. c. 119, including what the defendant claims was the requirement that a transfer of a juvenile to Superior Court in accordance with § 61 be accompanied by subsidiary written findings based upon clear and convincing evidence. In 1996, the Legislature amended § 72A by deleting the reference to §§ 53-63.

[7]Because we decide that § 72A, as in effect in 1990, contains no statutory requirement of written findings, we need not engage in the ex post facto analysis. Written findings are not statutorily required under either version.

[8]Ancillary proceedings in the Supreme Judicial Court, including a petition filed by the Commonwealth with the single justice for review of the remand order under G. L. c. 211, § 3, and an appeal to the full bench from the denial thereof are immaterial to our answer to the reported question.

where as here, the record supports the Juvenile Court judge's determination of probable cause and her exercise of discretion to authorize prosecution of the defendant as an adult, dismissal of the indictment is not warranted.

*Discussion.* The reported question rests upon the premise that compliance with G. L. c. 119, § 72A, requires written findings. We hold that it does not.

In the context of transfer of a juvenile for treatment as an adult under G. L. c. 119, § 61,[9] the Supreme Judicial Court has observed that written findings are a statutory, not a constitutional requirement. See *Commonwealth* v. *Roberts*, 362 Mass. 357, 369 (1972); *Commonwealth* v. *White*, 365 Mass. 301, 306-307 (1974), cert. denied, 419 U.S. 1111 (1975). Similarly, written findings are not a constitutional requirement for prosecution under § 72A of an individual who commits a crime as a juvenile but is not apprehended until an adult.

Nor are written findings a statutory prerequisite to a § 72A transfer. Unlike § 61, which, when it was in effect, contained an explicit requirement of written subsidiary findings, § 72A makes no mention of written findings. The defendant posits such a requirement as implicit in § 72A's provision that the transfer determination "shall be heard and determined in accordance with sections fifty-three to sixty-three, inclusive." Consequently, he contends, the § 72A determination must mirror the § 61 requirement of written findings to support a transfer decision. Plausible as the defendant's argument appears at first blush, the contention is flawed both in law and in logic. We do not write upon a blank slate. The defendant's central contention, that § 72A incorporates all of the requirements for transfer contained in § 61, was considered and rejected in *Commonwealth* v. *Bousquet*, 407 Mass. 854, 858-860 (1990), which, as here, involved a defendant's prosecution as an adult for a crime committed as a juvenile several years earlier. There, the court held:

> "Since the Legislature provided specific standards for transfer in § 72A . . . these specific standards preempt

[9]In 1996, as part of the comprehensive juvenile justice legislation that amended G. L. c. 119, § 72A, the Legislature also repealed G. L. c. 119, § 61. See St. 1996, c. 200, § 7.

the § 61 standards in this case. In other words, the specific provisions of G. L. c. 119, § 72A, relative to transfer are applicable to a § 72A transfer hearing and the standards set forth in § 61, despite the general incorporation of §§ 53-63 are not controlling."

*Id.* at 858-859.

Although § 61 is no longer operative, see note 9, *supra,* examination of its underlying considerations illuminates the fundamental differences between the respective transfer decisions under that statute and § 72A. A § 61 transfer considered whether an individual who was within the age for prosecution as a juvenile should be subject to adult prosecution and possible adult penalties. Section 61 reflected a legislative determination that such a weighty decision should hinge on two ultimate findings: (1) that the child presented a significant danger to the public; and (2) that the child was not amenable to rehabilitation within the juvenile system. Those findings were to be proved by clear and convincing evidence grounded in specific evidentiary factors, such as the seriousness of the alleged offense; the juvenile's family, school and social history, including his court and juvenile delinquency record; adequate protection of the public; the nature of past treatment efforts; and the likelihood of rehabilitation. See G. L. c. 119, § 61.

A § 72A transfer presents an important, but altogether different inquiry: whether an individual who is alleged to have committed a crime while a juvenile, but who has "aged out" of the Juvenile Court's jurisdiction before being apprehended, will be subject to *any* prosecution *at all.* In the context of § 72A, the Legislature has determined that such a decision should depend upon the judge's discretionary assessment of two cognate considerations, the "protection of the public" and "the interests of the public," without the need for proof by clear and convincing evidence and without specific evidentiary considerations to guide the ultimate decision. See *Commonwealth* v. *A Juvenile,* 16 Mass. App. Ct. at 257 (defendant's amenability to rehabilitation, second component in § 61A transfer, is not relevant to § 72A determination). Thus, we conclude that unlike a § 61 transfer, a § 72A transfer requires neither clear and convincing evidence nor written subsidiary findings, but only record sup-

port that there is probable cause and that the Juvenile Court judge has exercised and not abused her discretion in concluding either that discharge is consistent with protection of the public or that the interests of the public require adult prosecution rather than discharge. See *Commonwealth* v. *Bousquet*, 407 Mass. at 858 ("With regard to transfer . . . § 72A specifically provides a different standard from that which is applicable in the ordinary juvenile case").

Here, the Juvenile Court judge did what was minimally required by § 72A. She conducted a hearing at which both sides had the opportunity to present evidence addressing probable cause and whether Davis's discharge was consistent with protection of the public or whether the interests of the public required adult prosecution rather than discharge. Notwithstanding the absence of written subsidiary findings, the record supports the conclusion that, based upon Belcher's eyewitness identification of Davis as the shooter, there is probable cause to believe that Davis murdered Searcy. See *Commonwealth* v. *A Juvenile*, 413 Mass. 148, 151 (1992) (minimum quantum of evidence for probable cause is whether Commonwealth has presented sufficient evidence to send case to jury if proceeding were trial). Although the Juvenile Court judge did not make specific reference to the heinous nature of Searcy's murder, nor recite the details of the killing in her order, compare *Commonwealth* v. *Bousquet*, 407 Mass. at 859-860, nevertheless we are satisfied she considered and properly exercised her discretion. See *Commonwealth* v. *Parham*, 390 Mass. 833, 838 (1984) (finding is clearly evident from record); *Commonwealth* v. *Gaulden*, 383 Mass. 543, 547 (1981) (absent explicit findings, we analyze record to see if findings implicit in judge's ruling are supported).

The defendant adduced no evidence bearing upon whether his discharge was consistent with the protection of the public, but argued only more generally that the interests of justice would not be served by adult prosecution. The Commonwealth's only evidence bearing upon protection of the public arose indirectly from its trying to establish the contrary: that the nature of the crime and the "barbarous" manner in which Davis murdered Searcy demonstrated that the interests of the public required

adult prosecution. The thrust of the Commonwealth's case was that if prosecution of Davis for Searcy's cold blooded execution was not in the interests of the public and consistent with protection of the public, it would be difficult to imagine what is. Put differently, discharge of an accused murderer without public trial would be inconsistent with the protection of the public.

We are satisfied that the absence of any evidence that Davis's discharge would be consistent with the protection of the public, the manner of Searcy's murder, and the self-evident nature of the proposition that it is in the interests of the public to prosecute an accused murderer, all informed the exercise of the Juvenile Court judge's discretion and the conclusion that adult prosecution was warranted. "The judge had a sufficient basis to conclude that the interests of the public required transfer. The defendant received the benefit of the judge's discretion on this issue, and the judge did not abuse that discretion." *Commonwealth* v. *Bousquet*, 407 Mass. at 860.

While § 72A does not require written subsidiary findings, we observe that making such findings, however brief, is a prudent and desirable practice. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 137 (2001). Written findings not only manifest that the judge properly exercised discretion by making explicit the reasons that lie inchoate in the record, but also inspire public confidence in the decision and its underpinnings.

We answer the reported question in the negative and remand to the Superior Court for further proceedings.

*So ordered.*