## COMMONWEALTH *vs.* MICHAEL SULLIVAN.

No. 09-P-2334.

Norfolk. September 14, 2010. - January 24, 2011.

Present: GRASSO, SMITH, & RUBIN, JJ.

*Juvenile Court,* Jurisdiction. *Superior Court,* Jurisdiction. *Jurisdiction,* Delinquent child, Transfer hearing. *Delinquent Child. Practice, Criminal,* Transfer hearing, Juvenile delinquency proceeding. *Evidence,* First complaint. *Rape.*

A Juvenile Court judge had jurisdiction pursuant to G. L. c. 119, § 72A, to transfer to the Superior Court a defendant who was not taken into custody and available to the Juvenile Court for disposition of the case against him until after his eighteenth birthday, even though the defendant was in no way responsible for the delay in his prosecution, which was based on an offense occurring when the defendant was sixteen years old. [633]

At the trial of an indictment charging rape of a person under sixteen by force, error, if any, in the admission of first complaint testimony was not prejudicial, where the testimony did not link the defendant to the crime in any way and added little to the Commonwealth's case in terms of bolstering the credibility of the victim. [634-635] GRASSO, J., concurring.

INDICTMENT found and returned in the Superior Court Department on May 30, 2007, following a transfer hearing in the Norfolk County Division of the Juvenile Court Department before *Joseph E. Johnston,* J.

A motion to dismiss was heard by *Paul A. Chernoff,* J., and the case was tried before *Janet L. Sanders,* J.

*Kenneth I. Seiger* for the defendant.

*Alexei Tymoczko,* Assistant District Attorney, for the Commonwealth.

RUBIN, J. The defendant appeals from his conviction in the Superior Court of one count of rape of a person under sixteen by force. G. L. c. 265, § 22A. The offense occurred when the defendant was sixteen years old. The victim, then fourteen years old, who was at the defendant's house along with several other teenagers late on a Friday evening in December, 2003, was

forcibly raped by his codefendant, sixteen year old Kamil Os-trowsky, while the defendant held her down by her shoulders.

The police investigated the crime, and when the defendant was seventeen years old, the complaining witness was videotaped as part of a Sexual Abuse Investigation Network (SAIN) inter-view. The follow-up police investigation was completed well before the defendant turned eighteen.

In February, 2006, when the defendant was eighteen years old, the complaining witness contacted the police and indicated that she wanted to prosecute, and the police applied for a com-plaint against the defendant. On August 23, 2006, when the defendant was nineteen, a complaint issued in the Norfolk County Division of the Juvenile Court Department against the defend-ant alleging one count of rape of a child by force, as well as other charges not relevant to this appeal.

General Laws c. 119, § 72A, as amended by St. 1996, c. 200, § 13A, states in relevant part that:

> "If a person commits an offense or violation prior to his seventeenth birthday, and is not apprehended until after his eighteenth birthday, the [juvenile] court, after a hear-ing, shall determine whether there is probable cause to believe that said person committed the offense charged, and shall, in its discretion, either order that the person be discharged, if satisfied that such discharge is consistent with the protection of the public; or, if the court is of the opinion that the interests of the public require that such person be tried for such offense or violation instead of be-ing discharged, the court shall dismiss the delinquency complaint and cause a criminal complaint to be issued."

After a hearing under § 72A, the Juvenile Court transferred the proceedings. A grand jury subsequently returned an indict-ment against the defendant.

It is undisputed that the defendant was in no way responsible for the delay in his prosecution. The defendant argues that because he did not evade or attempt to evade prosecution and was identified and available for prosecution while still seventeen, he was not "apprehended" after his eighteenth birthday within the meaning of § 72A. On this basis, the defendant filed a mo-

tion to dismiss, alleging that the Juvenile Court did not have jurisdiction to transfer the defendant under § 72A, and therefore the Superior Court lacked jurisdiction. A Superior Court judge concluded that the transfer from Juvenile Court was authorized under the statute and denied the defendant's motion.

In *Commonwealth* v. *A Juvenile*, 16 Mass. App. Ct. 251, 257 (1983), we "construe[d] 'apprehended' as used in § 72A to mean that a person is taken into custody and available to the Juvenile Court for disposition of the case against him." That case, to be sure, involved a defendant who, after an initial apprehension before he was seventeen years old, later defaulted and then was apprehended again on a default warrant only after he was eighteen. *Id.* at 252. But the construction of the statute in *A Juvenile* was not limited to those circumstances. Because all parties agree that the defendant in this case was not "taken into custody *and* available to the Juvenile Court for disposition of the case against him," *id.* at 257 (emphasis added), "until after his eighteenth birthday," G. L. c. 119, § 72A, his case was subject to a § 72A proceeding, regardless of whether the defendant was taken into custody only after evading or attempting to evade prosecution.[1]

While the language of the statute and our construction of it in *A Juvenile* bind us, we do note that the alternative construction of the statute proposed by the defendant would result in defendants over seventeen, like the defendant here, who age out of the Juvenile Court before being taken into custody but who did not evade or attempt to evade prosecution, being free of any possibility of any criminal prosecution for crimes committed prior to their seventeenth birthdays since after aging out they would not be subject to prosecution in the Juvenile Court, see G. L. c. 119, §§ 72 and 74, or in any other court. It is most unlikely that the Legislature would have intended such a result.

The defendant also argues that on the facts and circumstances of this case, the prosecution of the defendant in the Superior

---

[1] The Commonwealth argues that apprehension occurs not only when an individual is arrested and available to the court, but also when "process commences." Since the defendant was neither taken into custody nor subject to process on or before his eighteenth birthday, we may assume without deciding that commencement of process and availability to the court would also amount to "apprehension."

Court, where, as the judge noted, there might have been less flexibility in sentencing than in the Juvenile Court, violated his due process rights. Because this issue was not raised below, we decline to address it here.[2]

Finally, the defendant argues that the first complaint doctrine was violated by the testimony of the individual identified by the victim as the first complaint witness. The judge properly identified one of the friends of the victim, Jane,[3] as the first complaint witness based on a voir dire of the victim. The rape occurred on a Friday night. The victim testified that the next day, on Saturday morning, she told Jane that she was raped without providing more detail. The victim further testified that she had a more detailed conversation with Jane the following day, Sunday, at a cheerleading benefit, identifying both codefendant Kamil Ostrowsky and the defendant as her rapists.

Jane testified, over objection, that the first complaint she heard from the victim was on Sunday at the cheerleading benefit. Her testimony of the substance of her first conversation with the victim was that the victim told her she had been raped by Ostrowsky, and that she had not mentioned the defendant. From the details to which Jane testified, this appears to be a description of the Sunday conversation to which the victim testified.

Even assuming, however, that it might, as the defendant argues, be error to admit the testimony of a first complaint witness about what the victim testified was actually the "second" complaint — a question we need not decide — there would be no warrant for reversal here because the admission of the first complaint witness's testimony was not prejudicial. The test for prejudicial error is the familiar one: whether we are "sure that the error did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994) (citation omitted). The defense theory was that this was a case of consensual sex, not rape, and the defendant was not involved. In support of this theory, the defendant offered videotape testimony from Ostrowsky (who was deported following incarceration for

---

[2] The defendant makes no argument that this failure should be excused because of "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Vasquez*, 456 Mass. 350, 356 (2010).

[3] A pseudonym.

an unrelated offense) admitting to statutory rape but not the use of force and claiming that the defendant was not involved. The defense also emphasized that on the night in question, the victim voluntarily began kissing Ostrowsky, and that she also, by her own admission, had consensual sex with Ostrowsky less than two weeks after the alleged rape.

The Commonwealth's substantive evidence in this case ties the defendant to the sexual assault against the victim in two ways. First, there is the victim's account of the crime describing the defendant's role. Second, there is the testimony by the victim, confirmed by Jane who was the first complaint witness, that within days of the assault, the victim called the defendant with Jane on the line and the defendant apologized, admitting to his role in the rape. This latter evidence was the centerpiece of the Commonwealth's closing.

The first complaint testimony, which was not to be considered for its substance but only to evaluate the credibility of the victim, supports the victim's account that this was not a case of consensual sex, but it does not link the defendant to the crime in any way. Given the similarly corroborative implications of the independently admissible evidence of Jane's presence on the three-way telephone call shortly after the first complaint to which she testified, the complaint testimony adds little to the Commonwealth's case in terms of bolstering the credibility of the victim. On the other hand, the failure of Jane to remember any mention of the defendant in the complaint may have been marginally harmful to the Commonwealth's case.

In these circumstances, we think that the admission of Jane's first complaint testimony, even assuming there was any error in its admission, could at most have had but a slight effect on the jury.

*Judgment affirmed.*

GRASSO, J. (concurring). I concur in the result, but write separately to express my view that the judge did not err in admitting the testimony of the victim's friend, Jane,[1] as first complaint

---

[1] A pseudonym.

testimony. Trial judges are faced with myriad complex questions regarding admissibility of evidence. Especially is this so in the context of first complaint. See *Commonwealth* v. *McCoy*, 456 Mass. 838, 855-856 (2010) (Marshall, C.J., concurring) (noting confusion over application of first complaint doctrine). When, as here, the judge provides a reasoned, sensible, and correct ground for overruling the defendant's first complaint objection, we ought to affirm that ruling and provide some guidance to trial judges.[2]

There is no dispute that Jane was the first person to whom the victim made her complaint and that the victim's complaint related to a single incident.[3] "[T]he person who was first told of the assault . . . may testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief." *Commonwealth* v. *King*, 445 Mass. 217, 243 (2005), cert. denied, 546 U.S. 1216 (2006). Compare *Commonwealth* v. *Kebreau*, 454 Mass. 287, 294-295 (2009) (testimony from separate first complaint witnesses admissible in judge's discretion when widely separate incidents at issue). Whether the victim first complained on Saturday (as she recalled) or on Sunday (as Jane remembered) reflected, at most, differing recollections as to when, within a very short span, the first complaint was made.[4] While such discrepancies may have provided fodder for cross-examination and argument as to witness credibility, they did not render Jane something other than a first complaint witness or her testimony something other than first complaint testimony. See *Commonwealth* v. *King*, *supra* at 245 ("a defendant will be free to cross-examine both the first complaint witness and the

---

[2]The judge ruled that the discrepancies between the victim's and Jane's recounting of the first complaint did not render Jane's testimony inadmissible but bore on the credibility of the witnesses.

[3]The Commonwealth's theory at trial was that Kamil Ostrowsky penetrated the victim while the defendant held her down.

[4]Under the doctrine of first complaint, unlike its fresh complaint predecessor, "the complainant may also testify to the details of the first complaint (i.e., what the complainant told the first complaint witness) and also why the complaint was made at that particular time." *Commonwealth* v. *King*, *supra* at 245. While it is difficult to ascertain the tactical reasons why defense counsel sought to preclude admission of Jane's first complaint testimony that the victim reported a rape by Ostrowsky, without mention of the defendant, the first complaint doctrine does not bar that testimony.

complainant about the details of the complaint, and draw to the jury's attention any discrepancies in the complainant's story that come to light only as a result of this additional information"). "[T]he timing of a complaint is simply one factor the jury may consider in weighing the complainant's testimony." *Id.* at 242.

Because the judge did not err in admitting Jane's testimony, no prejudicial error arises. See *Commonwealth* v. *Sullivan*, 76 Mass. App. Ct. 864, 869 (2010) (review for prejudicial error "involves a two-part analysis: '[1] was there error; and [2] if so, was that error prejudicial' ").[5]

---

[5]Although the absence of error renders further analysis unnecessary, I agree with the majority that even were error to be shown in the admission of Jane's first complaint testimony, no prejudice inured to the defendant.