STATE OF WEST VIRGINIA

*v.*

BILLY JOE LAWS, JR.

(No. 13886)

STATE OF WEST VIRGINIA

*v.*

JODIE LEE DAVIS

(No. 13870)

Decided December 12, 1978.

■■■■■■■■■■■

■■■■■■■■■■■

*Shaffer, Theibert, Ikner & Schlaegel, H. G. Shaffer, Jr.,* for Laws and Davis, relators.

*Chauncey H. Browning,* Attorney General, *Thomas J. Steele, Jr., and Gregory E. Elliott,* Assistant Attorneys General, for State.

NEELY, JUSTICE:

These cases, consolidated on appeal, present questions pertaining to criminal proceedings against juveniles prior to the enactment of the new Juvenile Proceedings Act, *W.Va. Code,* 49-5-1 *et seq.* [1978]. Specifically appellants contend that they did not voluntarily, intelligently, and knowingly waive their constitutional rights before giving written and oral confessions to the crime charged; that their cases were erroneously tried in the criminal jurisdiction of the court after moving for transfer to the juvenile court; and, that the court below gave instructions which placed unconstitutional burdens of proof on the defense. The appellants' trials were properly held in the criminal court; however, since instructions placing unconstitutional burdens of proof on the defense were given, we reverse and remand for new trials. Although it does not appear to us that appellants' statements were unconstitutionally admitted, we decline to pass on this issue, but prefer instead to discuss the appropriate standard and permit that standard to be applied at retrial.

Appellants were convicted of first degree murder pursuant to *W.Va. Code,* 61-2-1 [1923]. According to their written confessions which did not vary in any material degree, Billy Joe Laws and Jodie Lee Davis, who were

both fifteen years old at the time of the crime left school on Thursday, February 21, 1974 with tentative plans of "running away" to Mexico. After securing a gun from Billy Joe Law's home and twenty dollars from Jodie Lee Davis' father, they purchased some marijuana, and persuaded someone to purchase shells for their pistol. Realizing the need for transportation they began looking for a ride. Shortly after midnight, they stopped the decedent, Tillis Dunn, as he was leaving work at Gino's (a fast food restaurant in Man, West Virginia) and requested a ride. After getting into the car, the boys pulled the gun on Mr. Dunn and ordered him to drive toward Charleston, with which request Mr. Dunn promptly complied. By morning the two appellants had decided to return home due to lack of money but determined they would need to kill Mr. Dunn because he knew too much. Mr. Dunn was forced to remove his shoes and jacket, climb a wooded hill and lie down in a hollowed log. Jodie Lee Davis held the gun on him but was unable to shoot. Jodie passed the gun to Billy Joe Laws and Jodie then hit Mr. Dunn with rocks until he was unconscious. Billy Joe Laws finally shot Tillis Dunn. The two boys left the scene in Mr. Dunn's car which they later abandoned before going home.

Billy Joe Laws was arrested on February 24, 1974 on a warrant charging him with brandishing a deadly weapon, a charge unrelated to the crime of killing Mr. Dunn. He was taken to the Man City Hall where he was fully informed of his rights, indicated that he understood those rights and executed a written waiver of rights. While questioning Billy Joe Laws on other matters, the arresting officer asked him if he had been around Gino's in Man, West Virginia on the night Tillis Dunn disappeared. When he denied being there, the officer told him that one Otto Mutters had seen him near Gino's and at this point Billy Joe Laws orally confessed that he and Jodie Lee Davis had killed Tillis Dunn, giving a detailed recital of events before and after the murder. Laws went with the arresting officer to Laws' home to get the gun and was then taken to Boone County where he di-

rected officers to the murder site where the body was found. That night he signed a written confession taken after he had been fully advised of his rights, had specifically indicated that he understood each of his rights, and had signed a written waiver of rights. He now contends that because he was fifteen years old, questioned in a police dominated atmosphere, and was not aware that he was to be questioned about the disappearance of Tillis Dunn when he initially waived his rights, he did not voluntarily, intelligently and knowingly waive his rights to counsel and to remain silent.

Jodie Lee Davis was arrested at his home by three officers on February 25, 1974. He was told he was to be questioned about Tillis Dunn's death and was read his rights which he indicated he understood and waived. He then gave the officers a detailed oral confession to Tillis Dunn's murder. He was transfered to the State Police in Madison, West Virginia where after hearing his rights read to him again, indicating that he understood his rights, and signing a written waiver of them, he executed a written confession to the murder. He then accompanied officers and Billy Joe Laws to Tillis Dunn's car, still located where the two boys had abandoned it. He now contends that because he was fifteen years old and his father was not present during questioning he did not voluntarily, intelligently, and knowingly waive his rights.

I

Appellants' claim that they did not voluntarily, knowingly, and intelligently waive their rights to counsel and to remain silent are based primarily on the supposition that juvenile rights should be guarded with a greater zeal than adult rights to insure that confessions are not a result of adolescence, fear or fantasy. *In re Gault*, 387 U.S. 1 (1967). We enthusiastically endorse this basic premise, but find that the circuit judge was correct in ruling that there is nothing that prevents a minor above the age of tender years from executing an effective waiver of rights solely by virtue of his minority, *Gallegos*

*v. Colorado*, 370 U.S. 49 (1962); *Harris v. Commonwealth*, 217 Va. 715, 232 S.E.2d 751 (1977).[1] However, any confession made by a minor must be scrutinized under the totality of the circumstance which includes an evaluation of the following factors:

> 1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; 5) whether the accused was interrogated before or after formal charges had been filed; 6) methods used in interrogation; 7) length of interrogations; 8) whether vel non the accused refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated an extra judicial statement at a later date. *West v. United States*, 399 F.2d 467 at 469 (5th Cir. 1968). *See also, State In Interest of Dino*, ____ La. ____, at ____, 359 So.2d 586 at 591 (1978).

Neither appellant raises the possibility of being afforded the protections of the new Juvenile Proceedings Act, *W.Va. Code*, 49-5-1 *et seq.* [1978] first enacted in 1977, but we feel called upon to make it clear that all the protections added by the new act are not retroactive in effect. These protections, while expressing the policy of the Legislature, are not constitutionally mandated. While

---

[1] Appellant Billy Joe Laws contends the trial court used the wrong standard of proof in the *in camera* hearing on whether his confession was voluntarily given. The correct standard is that the State has the burden of proving by a "preponderance of the evidence" that the confession was voluntary. *State v. Starr*, ____ W. Va. ____, 216 S.E.2d 242 (1975). While the trial court did not specifically make his finding in the above quoted language, he clearly found the statement admissible, then inquired if there were "any other terminology" needed. Sufficient evidence existed for a finding by the "preponderance of the evidence" and any error resulting from the use of magic language is harmless, especially since the court gave the defendant a clear opportunity to cure any defect in the court's phrasing of its ruling.

under the current provision of *W.Va. Code*, 49-5-1(d) [1978] extra-judicial statements other than *res gestae* statements by a child under sixteen years of age made to law enforcement officers are not admissible if made outside the presence of the child's counsel, such was not the law at the time of appellants' trials. The same is true of the current provision in *W.Va. Code*, 49-5-9 [1978] that no interrogation can be made without the presence of a parent or counsel. While we do not question the legislature's wisdom in providing protections for juveniles above those constitutionally required, we do not find any authority for retroactive application of those standards since such retroactivity was not specifically provided. Retroactive application of these provisions of *W.Va. Code*, 49-5-1(a) [1978] and *W. Va. Code*, 49-5-9 [1978] would have the effect of nullifying confessions which were constitutionally and legally sound at the time they were given. We do not envisage that such a miscarriage of justice was the intent of the Legislature. However, on retrial of this case, the trial court should apply the functional criteria set forth above to arrive at a conclusion concerning the voluntary nature of the confessions under a totality of the circumstances test.

## II

Appellants claim that it was prejudicial error for the lower court to refuse transfer of their cases to the juvenile jurisdiction of the court. Under current law, if a criminal proceeding is instituted against a person under nineteen years of age who was under eighteen years of age at the time of the alleged offense, the matter is immediately certified to the juvenile jurisdiction of the circuit court, *W.Va. Code*, 49-5-1(a) [1978], and removal of the matter to the criminal jurisdiction of the court requires affirmative action by the prosecuting attorney in the form of a written motion on grounds to be proven by clear and convincing evidence, *W.Va. Code*, 49-5-10 [1978] although establishment of probable cause that the juvenile is guilty of murder permits a transfer to criminal jurisdiction without further inquiry. *W.Va. Code*, 49-5-10(d)(1) [1978]. Under the law applicable at the time of

appellants' trials, juvenile jurisdiction under the former provisions of *W.Va. Code,* 49-5-3 [1975] did not attach at all where the alleged violation of law was a capital offense if committed by an adult. *See State ex rel. Hinkle v. Skeen,* 138 W. Va. 116, 75 S.E.2d 223 (1953); *State ex rel. Campbell v. Wood,* 151 W. Va. 807, 155 S.E.2d 893 (1967). Although each of the appellants moved for transfer to juvenile jurisdiction, neither had either a statutory or a constitutional right to transfer and, therefore, the circuit court did not err by refusing transfer. The automatic juvenile jurisdiction alienable only by affirmative prosecutorial action under current law is, however, available to appellants on retrial since retroactive application of that provision promotes the just administration of the laws as they apply to juvenile defendants and does not place an insurmountable burden on the State.[2]

### III

Appellants contend that certain instructions given to the jury placed unconstitutional burdens of proof on the defense. In both appellants' trials the following instruction was given:

> The Court instructs the jury that where a homicide is proved, the presumption is that it is murder in the second degree, and the burden is on the state to show that it is murder in the first degree; and upon the accused to show that it was without malice, and is, therefore, only manslaughter, or that he acted lawfully and is, therefore not guilty, and in arriving at a verdict in this case, as to the degree of guilt, if any, the jury should take into consideration all the evidence, both for the state and defense.

As we stated in *State v. Pendry,* ____ W.Va. ____, 227 S.E.2d 210 (1976):

---

[2] Of course, application of prior law on disposition in trials of juveniles held before the enactment of *W.Va. Code,* 49-5-1(a) 1978] and *W.Va. Code,* 49-5-10 [1978] will not serve as grounds for either appeal or habeas corpus. If a new trial is awarded on other grounds then *W.Va. Code,* 49-5-1(a) and *W.Va. Code,* 49-5-10 becomes applicable.

> In a criminal prosecution, the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged, and it is error for the court to instruct the jury in such a manner as to require it to accept a presumption as proof beyond a reasonable doubt of any material element of the crime with which the defendant is charged or as requiring the defendant either to introduce evidence to rebut the presumption or to carry the burden of proving to the contrary. Syl. pt. 4, *State v. Pendry, supra.*

The instruction that was given is identical to one disapproved by this Court in *State v. Pendry,, supra* applying the proscription of *Mullaney v. Wilbur*, 421 U.S. 684 (1975). while *Pendry* was decided after appellants' trials, its proscriptions are retroactive. *Jones v. Warden*, ___ W. Va. ___, 241 S.E.2d 914 (1978) applying *Hankerson v. North Carolina*, 432 U.S. 233 (1977).

In addition to the above quoted instruction, the following instruction was given at Billy Joe Laws' trial:

> The court instructs the jury that a man is presumed to intend that which he does or which is the immediate or necessary consequences of his own act, and if the defendant, Billy Joe Laws, Jr., with a deadly weapon in his possession, without any or upon very slight provocation, gave Tillis Dunn a mortal wound, he, the defendant, is prima facie guilty of wilful [sic], deliberate and premeditated killing, and the necessity rests upon him of showing extenuating circumstances and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, he is guilty of murder in the first degree.

Under the doctrine of *Mullaney* and *Pendry* this instruction, although not assigned as error, is not a correct statement of the law and if it is given at the retrials, it will be reversible error.[3]

---

[3] In addition to those discussed in the text of this opinion appellants either alone or collectively assigned as error the alleged lack

Accordingly for the reasons set forth above, the judgment of the Circuit Court of Boone County is reversed and the cases are remanded for new trials.

*Reversed and remanded.*

of a meaningful psychiatric examination, an apparent problem with the production of police reports, the court's refusal to give certain defense instructions, the court's giving of certain State instructions, the court's overruling of defendants' pleas in abatement, demurrers, and motions to quash the indictments, and the introduction of certain State's exhibits. We have examined all these assigned errors and find them not sufficiently meritorious to warrant discussion.