329 S.E.2d 865

**STATE of West Virginia**

v.

**Curtis Jerome MANNS, aka Curtis Jerome White.**

**No. 16358.**

Supreme Court of Appeals of West Virginia.

April 18, 1985.

Charles W. Pace, Princeton, J. Peter Richardson, Bluefield, for appellant.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Justice:

Curtis Manns was convicted of first degree murder with a recommendation of mercy by a Mercer County jury. On appeal, he assigns a number of errors. However, for the reasons herein set out, we decline to reverse his conviction.

We will summarize the basic facts surrounding the crime and then will elaborate on them as necessary in discussing the various assignments of error. On February 20, 1981, the defendant and two of his friends went to the home of Elmer Hutchins to steal money from him. They arrived at approximately 11:00 o'clock that evening, just an hour before the defendant's eighteenth birthday, and knocked on the front door. Mr. Hutchins opened the door and was struck on the head by one of the defendant's friends. As he fell to the floor, he seized his assailant's wrist and refused to let go.

At this point, the defendant's friend told the defendant to shoot Mr. Hutchins, which he did with a .22-caliber rifle. They then fled the house. Mr. Hutchins was able to get to his telephone and report to the operator that he had been shot. He was dead when found by the police and rescue squad.

## I.

### JUVENILE OR CRIMINAL JURISDICTION

Entwined in several of the issues raised by the defendant is whether the circuit court properly had initial juvenile jurisdiction over him. The crime was committed when the defendant was about an hour away from his eighteenth birthday,[1]

---

**1.** It could be argued that the defendant was actually eighteen years old when he committed the crime shortly before his eighteenth birthday because at common law, a fraction of a day is considered to be one full day in determining age. The end result of this calculation is that on the day before a seventeen-year-old's birthday, he is considered under the common law to be eighteen. Some courts have applied this common law rule in juvenile cases while others have rejected it. *Edmonds v. State,* 154 Ga.App. 650, 269 S.E.2d 512 (1980); *State v. Brown,* 443 S.W.2d 805 (Mo.1969) (En Banc); *State in Interest of F.W.,* 130 N.J.Super. 513, 327 A.2d 697

but he was not arrested for the crime until he was nineteen years and four months old.[2] The circuit court assumed juvenile jurisdiction, held a transfer hearing pursuant to W.Va.Code, 49–5–10, and transferred the defendant to the criminal jurisdiction of the circuit court. We decline to further discuss this issue which was not specifically raised because even if the circuit court initially had no juvenile jurisdiction, the defendant suffered no harm by going through the transfer hearing.

## II.

## DEFENDANT'S CONFESSION

The defendant asserts a number of errors with regard to the admission of his confession. The circumstances surrounding the taking of the defendant's confession are as follows. Although the crime was committed in February, 1981, the defendant was not implicated in the crime until June, 1982, at which time he was living in Baltimore, Maryland.

On June 14, 1982, the defendant was arrested in Baltimore on a fugitive warrant and taken the next day before a Maryland district court judge, who advised him of the West Virginia charge and the extradition procedure. The defendant waived his rights to counsel and to contest extradition. Thereafter, on June 21, 1982, two West Virginia State Police officers arrived in Baltimore to transport him back to West Virginia.

At the hearing on the transfer from juvenile to criminal jurisdiction, Officer R.D. Fulknier testified about going to Baltimore to bring the defendant back to West Virginia. He stated that he and the other officer were dressed in civilian clothes and drove an unmarked car. They obtained custody of the defendant around 9:30 or 10:00 o'clock in the morning and Officer Fulknier read the defendant his *Miranda* rights. The defendant was not handcuffed or physically constrained by any other type of device during the trip to West Virginia.

Officer Fulknier testified at the suppression hearing that after he read the defendant his rights and placed him in the car, he asked the defendant if he would talk about the charge. The defendant indicated that he would talk, but no conversation took place about the crime at that time because they were having trouble finding their way out of Baltimore.

After they were out of Baltimore, the defendant inquired if his companions had been arrested and whether they had given statements. Officer Fulknier responded affirmatively and read one or more extracts from the companions' statements to the defendant and showed him one of the signatures on the statements. At this point, the defendant said that he wanted to set the record straight, but Officer

---

(1974); *In Re Edward,* 441 A.2d 543 (R.I.1982). *Contra United States v. Tucker,* 407 A.2d 1067 (D.C.1979); *State v. Stangel,* 284 N.W.2d 4 (Minn.1979); *State v. Alley,* 594 S.W.2d 381 (Tenn.1980). *See generally* 42 Am.Jur.2d *Infants* § 6 (1969); 43 C.J.S. *Infants* § 3 (1978); Annot., 5 A.L.R.2d 1143 (1949).

**2.** Under W.Va.Code, 49–5–1(a), a circuit court has original juvenile jurisdiction over persons who have committed offenses while under eighteen years of age and are brought before a court while under nineteen years of age. In the absence of specific statutes, many courts have held that a person who has committed a crime as a juvenile, but who is not brought before a court on the charge until after becoming an adult, must be tried as an adult. Some courts will not apply this rule if it can be shown that the State deliberately attempted to avoid juvenile jurisdiction by delaying the arrest of the juvenile. *See*

*generally Bendler v. Percy,* 481 F.Supp. 813 (E.D. Wis.1979); *McBeth v. Rose,* 111 Ariz. 399, 531 P.2d 156 (1975) (In Banc); *State v. Fowler,* 194 A.2d 558 (Del.1963); *State v. A.N.F.,* 413 So.2d 146 (Fla.Dist.App.1982); *In Re Appeals No. 1022 and No. 1081, September Term, 1975,* 278 Md. 174, 359 A.2d 556 (1976); *D'Urbano v. Commonwealth,* 345 Mass. 466, 187 N.E.2d 831 (1963); *Matter of Welfare of S.V.,* 296 N.W.2d 404 (Minn.1980); *State ex rel. Elliot v. District Court,* 684 P.2d 481 (Mont.1984); *State v. Little,* 241 Or. 557, 407 P.2d 627 (1965) (En Banc), *cert. denied,* 385 U.S. 902, 87 S.Ct. 208, 17 L.Ed.2d 133 (1966); *Pruitt v. Guerry,* 210 Va. 268, 170 S.E.2d 1 (1969); *State v. Calderon,* 102 Wash.2d 348, 684 P.2d 1293 (1984) (En Banc); *State v. Becker,* 74 Wis.2d 675, 247 N.W.2d 495 (1976); *State ex rel. Koopman v. County Court,* 38 Wis.2d 492, 157 N.W.2d 623 (1968); S. Davis, Rights of Juveniles § 2.3 (2d ed. 1984); Annot., 89 A.L.R.2d 506 (1963).

Fulknier replied that they would talk about it after lunch.

After eating at a restaurant, Officer Fulknier stated they resumed their journey and at around 2:00 o'clock in the afternoon he read the defendant a waiver of rights form, which the defendant signed. Subsequently, the defendant gave a statement explaining his involvement in the crime. The defendant's testimony with regard to these events does not differ materially from the officer's testimony, except that the defendant claimed that he had asked for a lawyer prior to signing the written waiver form. This allegation was denied by the officer. The trial court found the statement given by the defendant to be admissible.

■ The defendant argues that because he was just under eighteen at the time the crime was committed in February, 1981, his confession in June, 1982, when he was nineteen years and four months old, must be judged by the juvenile standards under W.Va.Code, 49–5–1(d). However, even if this statute were applicable to the defendant, it does not prohibit all juvenile confessions, but rather sets certain specified standards, based on the age of the juvenile, when extrajudicial statements are inadmissible. *State v. Howerton*, 174 W.Va. 801, 329 S.E.2d 874 (1985). Since the defendant was over sixteen years of age at the time of his confession, he was not entitled to the protections of W.Va. Code, 49–5–1(d).

■ We discussed the general standards relating to juvenile confessions, where there is no applicable statutory provision, in *State v. Laws*, 162 W.Va. 359, 251 S.E.2d 769 (1978), where we concluded in Syllabus Point 1:

"There is no constitutional impediment which prevents a minor above the age of tender years solely by virtue of his minority from executing an effective waiver of rights; however, such waiver must be closely scrutinized under the totality of the circumstances."

In *Laws*, we concluded that a confession by a juvenile should be judged by the totality of the circumstances test, with a special emphasis being placed on the juvenile's age. This rule is consistent with most other jurisdictions. *See, e.g., Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Quick v. State*, 599 P.2d 712 (Alaska 1979); *State v. O'Connor*, 346 N.W.2d 8 (Iowa 1984); *State v. Hudson*, 404 So.2d 460 (La.1981); *State v. Nicholas S.*, 444 A.2d 373 (Me.1982); *Matter of Welfare of M.D.S.*, 345 N.W.2d 723 (Minn. 1984); *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984); *State v. Caffrey*, 332 N.W.2d 269 (S.D.1983); *Dutil v. State*, 93 Wash.2d 84, 606 P.2d 269 (1980) (En Banc); *State v. Woods*, 117 Wis.2d 701, 345 N.W.2d 457 (1984); *State v. Hunt*, 607 P.2d 297 (Utah 1980); Annot., 87 A.L. R.2d 624 (1963). *See also State v. Howerton, supra.* The test we apply to a juvenile's confession is similar to the test we apply to an adult's confession. *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261, 267 (1982), *citing Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We stated in Syllabus Point 3 of *Howerton*:

"'[Subject to the provisions of W.Va. Code, 49–5–1(d),] [t]here is no constitutional impediment which prevents a minor above the age of tender years solely by virtue of his minority from executing an effective waiver of rights; however, such waiver must be closely scrutinized under the totality of the circumstances.' Syllabus Point 1, as modified, *State v. Laws*, 162 W.Va. 359, 251 S.E.2d 769 (1978)."

■ At the time of the confession, the defendant was nineteen years and four months old, mentally competent, sober, and not physically constrained. There was no evidence concerning any promises made to the defendant nor was there any claim that the defendant was physically or verbally induced by the officers to confess. In view of the totality of the circumstances, we conclude that the defendant voluntarily and intelligently waived his rights and subsequently gave a confession that was properly admitted into evidence.

The defendant's reliance on *State ex rel. J.M. v. Taylor*, 166 W.Va. 511, 276 S.E.2d

199, 25 A.L.R.4th 1063 (1981), is misplaced. In *Taylor*, we analyzed a juvenile's ability to waive the right to counsel at a proceeding, which must be distinguished from the capacity of a juvenile to give a voluntary confession, as discussed in *Laws*.

▆▆▆ We also reject the defendant's contention that before he confessed he should have been advised that after a juvenile transfer hearing, he might be subject to adult criminal prosecution. Assuming, *arguendo*, that the defendant should be considered a juvenile even though he was over nineteen years of age at the time of the arrest and confession, the general rule is that in the absence of a statute, a law enforcement officer is not required to inform a juvenile that he might subsequently be tried as an adult.[3] The possibility that a juvenile does not understand the transfer procedure is another factor in applying the totality of the circumstances test to a juvenile's confession. Consequently, in view of all the circumstances surrounding the defendant's confession, we do not believe that the failure to advise the defendant of the juvenile transfer procedure in any manner affected the validity of his confession.

The defendant argues that the trip back to West Virginia involved a coercive setting and that there was an unreasonable delay in bringing him before a West Virginia magistrate. He cites *State v. Mollohan*, 166 W.Va. 60, 272 S.E.2d 454 (1980), where we held a confession obtained during a two-day trip from New Hampshire to West Virginia was involuntary. Significant differences exist between *Mollohan* and the present case. The troopers in *Mollohan* testified that on two occasions when they initially tried to obtain information from the defendant about the crime, he stated that he did not wish to discuss the matter.

We also pointed out in *Mollohan* that the defendant had a borderline IQ, a condition not existing here, and that he did not confess until the troopers exploited his avowed religious beliefs.

With regard to the prompt presentment question, we recognized in Syllabus Point 2 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984), that where West Virginia law enforcement officers go into another state to apprehend a fugitive, they are required to follow our prompt presentment statute, W.Va.Code, 62–1–5, and that an unreasonable delay in taking the fugitive to a magistrate or other judicial officer may render a confession taken before the presentment invalid.[4] In *Guthrie*, we relied on *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), where we discussed at length the historical reasons for a prompt presentment, the chief of which was to ensure that the defendant would have a neutral and detached magistrate to explain the charge against him and his right to counsel.

▆▆▆ It is clear that our prompt presentment cases are based on statutory grounds and are not of a constitutional dimension. *State v. Persinger, supra; State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793 (1978). The defendant failed to raise this objection below and, as a result, we decline to address it on appeal. Our general rule is that nonjurisdictional trial error not raised in the trial court will not be addressed on appeal. Syllabus Point 1, *Carter v. Taylor*, 172 W.Va. 696, 310 S.E.2d 213 (1983); Syllabus Point 1, *State v. Smith*, 169 W.Va. 750, 289 S.E.2d 478 (1982); Syllabus Point 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

---

3. *See, e.g., Matter of the Appeal in Pinal County, Juvenile Action No. J-677*, 134 Ariz. 502, 657 P.2d 915 (1982); *People v. Prude*, 66 Ill.2d 470, 6 Ill.Dec. 689, 363 N.E.2d 371, *cert. denied*, 434 U.S. 930, 98 S.Ct. 418, 54 L.Ed.2d 291 (1977); *State v. O'Connor*, 346 N.W.2d 8 (Iowa 1984); *In the Interest of Edwards v. State*, 227 Kan. 723, 608 P.2d 1006 (1980); *State v. Loyd*, 297 Minn. 442, 212 N.W.2d 671 (1973); *In Interest of A.D.R.*, 515 S.W.2d 438 (Mo.1974) (En Banc); *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977); *Quiriconi v. State*, 96 Nev. 766, 616 P.2d

1111 (1980); *Matter of V.W.B.*, 665 P.2d 1222 (Okla.Crim.App.1983); *Harris v. Commonwealth*, 217 Va. 715, 232 S.E.2d 751 (1977).

4. Syllabus Point 2 of *Guthrie* states: "West Virginia officers may not avoid our state rules about prompt presentment of arrestees and admissibility of confessions when they cross our borders to apprehend a fugitive criminal suspect."

## III.

### LACK OF WORD "FELONIOUS" IN INDICTMENT

The defendant complains that his indictment for first degree murder [5] did not contain the word "felonious" and, therefore, under *State ex rel. Reed v. Boles,* 148 W.Va. 770, 137 S.E.2d 246 (1964), and related cases, it is void and his conviction should be reversed.[6]

We spoke to this issue in *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43, 48 (1983), where the indictment was for " ' "murder in the first degree" by the willful, deliberate, and premeditated shooting of James B. Laxton.' " The defendant urged that the indictment was defective because the words "feloniously," "maliciously," and "unlawfully" were missing. We reviewed our prior law and stated that the purpose of an indictment is to plainly inform the defendant of the nature of the crime charged and to protect him against further or double jeopardy and concluded in Syllabus Point 3:

> "An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based."

*See also* Syllabus Point 3, *State ex rel. Whitman v. Fox,* 160 W.Va. 633, 236 S.E.2d 565 (1977); Syllabus Point 1, *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976); Syllabus Point 1, *State ex rel. Combs v. Boles,* 151 W.Va. 194, 151 S.E.2d 115 (1966).

We held in *Hall* that the indictment was sufficient without dealing with our cases that have held the absence of the words "felonious" or "feloniously" in a felony indictment renders the indictment defective. We believe these cases represent an archaic and overly technical view of the sufficiency of an indictment. Most courts hold that where the indictment, by reference to the offense charged, including the reference to any appropriate statute, clearly indicates that the charge is a felony, the absence of the word "felonious" or words of like import will not render the indictment invalid. *Brown v. State,* 239 A.2d 628 (Del.1968); *State v. Mower,* 298 A.2d 759 (Me.1973); *State v. Barkwell,* 590 S.W.2d 93 (Mo.Ct.App.1979); *Application of Faas,* 42 N.J.Super. 31, 125 A.2d 724 (1956), *cert. denied,* 353 U.S. 940, 77 S.Ct. 820, 1 L.Ed.2d 762 (1957); *Rose v. Gladden,* 245 Or. 119, 420 P.2d 622 (1966), *cert. denied,* 386 U.S. 1024, 87 S.Ct. 1382, 18 L.Ed.2d 464 (1967); *Bivens v. State,* 477 S.W.2d 231 (Tenn.Crim.App.1971).

We adopt this rule and to the extent that *Reed* and related cases espouse a per se rule that the omission of the word "felonious" renders a felony indictment invalid, they are overruled.[7]

## IV.

### PROOF OF VENUE

The defendant argues that there was insufficient evidence to prove the venue of the crime—that it occurred in Mercer County, West Virginia. We disagree. In

---

5. The material portion of the indictment states: "The grand jury charges: that on or about the 20th day of February, 1981, in the County of Mercer, State of West Virginia, RONALD LYNN COLLINS, DARNELL BRYANT aka DARNELL LOWE and CURTIS JEROME MANNS aka CURTIS JEROME WHITE committed the offense of 'Murder in the 1st Degree' by shooting Elmer M. Hutchins in the abdomen, with intent to cause his death and did cause his death in the commission of a robbery, against the peace and dignity of the State."

6. Syllabus Point 2 of *Reed* states: " 'In a felony indictment it is necessary to charge that the acts alleged to have been done by the accused were done "feloniously".' Syl.Pt. 1, *State v. Smith, et al.,* 130 W.Va. 183, [43 S.E.2d 802 (1947)]."

7. These cases include the following: *State ex rel. Scott v. Conaty,* 155 W.Va. 718, 187 S.E.2d 119 (1972), *overruled on other grounds, State v. Grinstead,* 157 W.Va. 1001, 206 S.E.2d 912 (1974); *State ex rel. Harding v. Boles,* 150 W.Va. 534, 148 S.E.2d 169 (1966); *State ex rel. Vandal v. Adams,* 145 W.Va. 566, 115 S.E.2d 489 (1960); *State v. Smith,* 130 W.Va. 183, 43 S.E.2d 802 (1947); *State v. Whitt,* 39 W.Va. 468, 19 S.E. 873 (1894).

*State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979), we discussed this issue at some length and concluded in Syllabus Point 5:

> "The State in a criminal case may prove the venue of the crime by a preponderance of the evidence, and is not required to prove the same beyond a reasonable doubt."

■■■ In the present case, two law enforcement officers familiar with the area where the crime was committed testified that the victim's house was in West Virginia.[8] The State also offered testimony from the victim's brother that he paid property taxes on his brother's house in Mercer County and this was corroborated by Fonda Moye, who worked in the Mercer County Assessor's office.[9] We believe that these facts were sufficient to prove venue under *Burton*'s preponderance test. *See also State v. Nicholson,* 162 W.Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980); *State v. Fox,* 103 W.Va. 144, 136 S.E. 835 (1927).

## V.

## OTHER ERRORS

■■■ The defendant claims that he was prejudiced because the State in its discovery responses did not list a .22-caliber rifle not found at the scene of the crime as a potential exhibit. We do not find this to be reversible error for a number of reasons. First, this rifle was not placed into evidence as the State was not able to prove it was the murder weapon. Second, the defendant was informed in discovery of the ballistics report by the State's expert which revealed two .22-caliber rifles had been ex-

amined. Furthermore, when this ballistics expert testified and made reference to this rifle, no objection was made by the defendant. We find no error on this point.

■■■ Several instructional errors are asserted, but we find them to be without merit. The case was tried on a felony-murder theory, *State v. Sims,* 162 W.Va. 212, 248 S.E.2d 834 (1978), and the fact that the homicide occurred during the course of an attempted robbery of the victim was essentially not disputed by the defendant. Consequently, the defendant's instructions on lesser included degrees of homicide and larceny in lieu of robbery were properly refused under Syllabus Points 1 and 2 of *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982).[10] Several other instructional errors are argued by the defendant, but they involve instructions which were rejected because their theories were covered in other instructions. We have traditionally held that the rejection of a duplicate instruction is not error. *State v. Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983); *State v. Holdren,* 170 W.Va. 355, 294 S.E.2d 159 (1982).

■■■ A final argument is that counsel were ineffective because the two lawyers were not experienced trial lawyers. However, there is no specific dereliction pointed out and in looking at the entire record we find none. Counsel filed numerous pretrial motions, ably conducted the trial, and offered approximately seventy defense instructions. They easily met our competent counsel test set out in *Scott v. Mohn,* 165 W.Va. 393, 268 S.E.2d 117 (1980), which relied on Syllabus Point 19 of *State v.*

---

8. The victim's house was located near the Virginia border.

9. The defendant also contends that it was error to permit this witness to testify because she was not listed on the State's witness list. We find no error for several reasons. Her testimony only related to the venue issue and it was cumulative of the other venue witness's testimony.

10. Syllabus Points 1 and 2 of *Neider* state:

"1. 'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981).

"2. Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction."

*Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).[11]

Finding no error, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.

**11.** Syllabus Point 19 of *Thomas* states:

"In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error."