# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 19-1087** (Berkeley County 18-F-318)

**Asaveon Coleman,**
**Defendant Below, Petitioner**

**FILED**

**January 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Asaveon Coleman, by counsel J. Daniel Kirkland, appeals the order of the Circuit Court of Berkeley County that sentenced him to life in prison, with mercy, for kidnapping; thirty years in prison for first-degree robbery; three to fifteen years in prison for attempted first-degree murder; two to ten years in prison for malicious assault; and two to ten years in prison for assault during the commission of a felony, all to be served consecutively.[1] The State of West Virginia, by counsel Elizabeth Grant, responds in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 18, 2016, Tyler O'Neil stopped at a convenience store in Martinsburg where he was approached by petitioner who was then sixteen years old and seeking a ride to Hedgesville. Because Mr. O'Neil was going in the opposite direction, he declined, but said he would drive petitioner to the corner. Once in the car, petitioner pulled a gun on Mr. O'Neil and demanded that he take petitioner toward Hedgesville. Petitioner also asked Mr. O'Neil whether he had any money or credit cards on him. The two traveled for twenty minutes until they ended up on a dead-end road. There, Mr. O'Neil parked his car, gave petitioner his wallet, and told him to exit the car. The two then fought over petitioner's gun and petitioner shot Mr. O'Neil in the face and in the neck and who is now paralyzed from the neck down. Petitioner then took Mr. O'Neil's wallet and phone, left Mr. O'Neil at the scene, and fled in Mr. O'Neil's car.

Petitioner used Mr. O'Neil's phone to call a friend, Diamond Jackson, whom he later picked up in Mr. O'Neil's car. Thereafter, the car was located by OnStar in Virginia. Eventually, the police found Ms. Jackson and obtained a picture of petitioner from her. During a photo-array

---

[1] The circuit court also sentenced petitioner to time served for petit larceny.

1

lineup, Mr. O'Neil identified petitioner as the person who had robbed and shot him. Three-and-a-half months later, on January 5, 2017, the Virginia police arrested petitioner in Virginia for crimes petitioner allegedly committed in Virginia. The Virginia police obtained a videotaped confession from petitioner regarding his Virginia crimes and the attack on Mr. O'Neil.

At a pretrial hearing on August 1, 2019, in West Virginia, Virginia Police Sgt. Frederick Chambers testified as follows regarding petitioner's arrest: Petitioner was apprehended and arrested with the use of a K-9 officer in Fairfax County, Virginia on January 5, 2017, between 10:00 a.m. and 11:00 a.m. Petitioner suffered a dog bite during his arrest and was taken to the hospital for about an hour for treatment. Sgt. Chambers testified that by the time he got to the hospital, petitioner was being discharged. He took petitioner to a nearby police station and placed him in an interview room. Sgt. Chambers then called West Virginia Trooper G. W. Merkich to notify him that petitioner was in custody. During that call, Sgt. Chambers and Trooper Merkich agreed that Sgt. Chambers would attempt to gain a confession from petitioner regarding the robbery and shooting of Mr. O'Neil in West Virginia. Petitioner was questioned by Sgt. Chambers and another officer. Petitioner provided Sgt. Chambers with several telephone numbers for his father and asked Sgt. Chambers if he was going to call the father. Sgt. Chambers responded that he had spoken with petitioner's father during his investigation and saw no reason to call him again. Petitioner told Sgt. Chambers that he was seventeen years old, had completed the eleventh grade, and could read and write. Petitioner also said that he was given medication at the hospital, but he did not believe he was under the influence of any substance. Sgt. Chambers told petitioner that he wanted to question him about a grand larceny of a grocery store in Virginia. Sgt. Chambers then read petitioner his *Miranda* rights. Petitioner acknowledged that he understood those rights and agreed to proceed with questioning. Sgt. Chambers questioned petitioner about the grand larceny and several other Virginia-based crimes. After petitioner confessed to those crimes. Sgt. Chambers asked petitioner about the robbery and shooting of Mr. O'Neil in West Virginia. Specifically, Sgt. Chambers said, "the information we are getting is that you had some property from this guy that got shot." Sgt. Chambers told petitioner that Mr. O'Neil survived the shooting and had identified petitioner in a photo array lineup. Petitioner responded as follows: "I guess I will get down to the nitty gritty." Petitioner said he spoke to a man outside a convenience store in West Virginia and said, "sir, can you please give me a ride home." "[W]e got in the car . . . and I had this little revolver . . . and I pulled it out." "We was driving and we end up coming to a dead end." "So, I'm like forget it, I'm just going to take the car." "I told him to get out the car so I just could rob him for the car." "I told him to walk . . . that is when he grabbed the gun . . . that is when I pulled the trigger back and shot him." Sgt. Chambers and petitioner then discussed other unrelated Virginia-based crimes. Thereafter, Virginia officers took petitioner to booking, where he was presented before an "intake officer," who serves a role similar to that of a magistrate in West Virginia.

Four or five days after petitioner's Virginia arrest, he was charged for his crimes against Mr. O'Neil in West Virginia via a juvenile petition. Later, a West Virginia grand jury indicted petitioner for (1) kidnapping in violation of West Virginia Code § 61-2-14a(a); (2) first-degree robbery in violation of West Virginia Code § 61-2-12(a)(1); (3) attempted first-degree murder in violation of West Virginia Code § 61-2-2; (4) malicious assault in violation of West Virginia Code § 61-2-9(a); (5) assault during the commission of a felony in violation of West Virginia Code § 61-2-10; (6) burglary in violation of West Virginia Code § 61-3-11(a); (7) conspiracy to commit burglary in violation of West Virginia Code § 61-10-31; and (8) attempted petit larceny in violation

of West Virginia Code § 61-3-12. Prior to trial the State dismissed the burglary and the conspiracy to commit burglary changes.

At a juvenile transfer hearing, the circuit court found probable cause to transfer petitioner to adult criminal status. Thereafter, petitioner filed a motion to suppress his statement to the Virginia police. In that motion, petitioner argued that West Virginia's prompt presentment statute, West Virginia Code § 49-4-705(c), applied to the Virginia police officers, and that the Virginia officers "unnecessarily delayed" in bringing him before a judicial officer. Petitioner also argued that his *Miranda* rights waiver was involuntary.

In its August 15, 2019, pretrial order, the circuit court denied petitioner's motion to suppress his videotaped confession to the Virginia police and found that: (1) Sgt. Chambers used no force prior to or during his interview of petitioner; (2) during the interview, petitioner's right arm was handcuffed to the wall; (3) petitioner was then seventeen years old; (4) Sgt. Chambers read petitioner his *Miranda* rights and petitioner said he understood those rights, knowingly and voluntarily waived them, and freely engaged in the interview; (5) Sgt. Chambers was polite throughout and petitioner showed no sign of distress or being pressured: (6) the interview was a reasonable three-hours-long and conducted under Virginia's standards; (7) Sgt. Chambers was under no duty to inform petitioner about potential charges in West Virginia; (8) petitioner willingly discussed his criminal acts in West Virginia; (9) petitioner is of average intelligence and attended school through eleventh grade; (10) petitioner appeared to understand the questions he was asked and he answered appropriately; (11) there was no evidence that petitioner was unable to understand his *Miranda* rights; (12) petitioner had interacted with the legal system for years; and (13) the absence of a parent or an attorney during the interview was not a reason to suppress petitioner's confession.

At petitioner's two-day trial, the State's evidence was consistent with the testimony presented during petitioner's juvenile transfer and pretrial hearings. Following trial, the jury found petitioner guilty on all counts: kidnapping; first-degree robbery; attempted first-degree murder; malicious assault; assault during the commission of a felony; and petit larceny. The trial court sentenced petitioner to an aggregate sentence of not less than thirty-seven years nor more than life in prison.

Petitioner now appeals. In his first of two assignments of error, petitioner argues that his statement to the Virginia police should have been suppressed. We apply the following standard of review:

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus Point 1, *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 1, *State v. Farley*, 230 W. Va. 193, 737 S.E.2d 90 (2012).

3

Petitioner contends that his statement to the Virginia police should have been suppressed because the Virginia officers did not, as provided by West Virginia Code § 49-4-705(c), immediately take him before a neutral, unbiased judicial officer, and the purpose of the delay was to obtain a confession. Section § 49-4-705(c) provides, in part:

> (c) Upon taking a juvenile into custody, with or without a court order, the [law-enforcement] official shall:
>
> (1) Immediately notify the juvenile's parent, guardian, custodian or, if the parent, guardian or custodian cannot be located, a close relative; . . .
>
> (4) Take the juvenile without unnecessary delay before a judge of the circuit court for a detention hearing pursuant to section seven hundred six of this article. If a circuit court judge is not available in the county, the official shall take the juvenile without unnecessary delay before any magistrate available in the county for the sole purpose of conducting the detention hearing. In no event may any delay in presenting the juvenile for a detention hearing exceed the next day after he or she is taken into custody.

Moreover, this Court has held that,

> [u]nder W.Va. Code, 49–5–8(d) [2], when a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate. If there is a failure to do so, any confession obtained as a result of the delay will be invalid where it appears that the primary purpose of the delay was to obtain a confession from the juvenile.

Syl. Pt. 3, *State v. Ellsworth*, 175 W. Va. 64, 331 S.E.2d 503 (1985). Petitioner contends that he was entitled to West Virginia's statutory and constitutional safeguards, and that the circuit court erred when it found West Virginia Code § 49-4-705 did not apply to his case and did not operate to exclude his videotaped statement to the Virginia police regarding Mr. O'Neil.

Petitioner maintains that this Court effectively decided this question in *State v. Guthrie*, 173 W. Va. 290, 315 S.E.2d 397 (1984), under a similar statute and situation. The defendant in *Guthrie* was indicted in West Virginia; however, the defendant was located in Virginia. A West Virginia state trooper went to Virginia and, in the company of Virginia police officers, arrested the defendant. However, rather than taking the defendant directly to a local Virginia magistrate, the West Virginia officer asked the Virginia troopers to take a detour "some distance away" so that the West Virginia officer could question the defendant. *Guthrie*, 173 W. Va. at 292, 315 S.E.2d at 399. During the delay, the defendant confessed to the trooper. *Id.* Thereafter, the defendant sought to suppress his confession. He argued that, under a Virginia statute, the trooper was required to "bring him before any judge who may be available in or convenient of access to the place where the arrest may be made, to answer the charge[.]" *Id.* at 293, 315 S.E.2d at 400. Because he was

---

[2] West Virginia Code § 49-4-705 was recodified from West Virginia Code § 49-5-8(d).

4

not promptly presented, as required by Virginia law *and* West Virginia law, the defendant argued his confession should be suppressed. The *Guthrie* Court agreed and ruled that the defendant's "confession is inadmissible in West Virginia" because of the delay in presenting him "to a neutral magistrate for an explanation of his rights[.]" *Id.* at 294, 315 S.E.2d at 401.

The State in *Guthrie* argued that West Virginia courts should not apply the West Virginia prompt presentment statute extraterritorially to an arrest that occurred in Virginia. This Court rejected the State's argument, finding that

> [t]his is not a question of extraterritorial application of our prompt presentment rule. We must decide whether a confession elicited under the facts in this case is admissible in our criminal courts. Guthrie is not being tried in Virginia for a crime he committed in Virginia. He is being tried here.

*Id.* The *Guthrie* Court found that where there is a "working arrangement" between West Virginia law enforcement officers and another state's officers, West Virginia officers cannot avoid prompt presentment requirements. The Court noted the similar federal court rule that

> if a "working arrangement" between federal and state officials is provable, federal officers can be held accountable for delays brought about by state authorities. Federal officials cannot conduct themselves illegally by collaboration with state authorities and avoid proscriptions against admission of confessions elicited under those circumstances.

*Id.* at 294-95, 315 S.E.2d at 402 (citation omitted). The *Guthrie* Court concluded that because the West Virginia state trooper worked together with the Virginia police to find and arrest the defendant in *Guthrie*, and because the evidence was clear that the delay in presentment was prompted by the West Virginia state trooper, the defendant was protected by West Virginia's prompt presentment requirement and, therefore, the defendant's confession was inadmissible. *Id.* at 295, 315 S.E.2d at 402.

After careful examination of the record in this case, we find that the facts in *Guthrie* are distinguishable from the facts in this case, and that West Virginia Code § 49-4-705 does not apply to petitioner's confession. In analyzing any statute, the primary goal "is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, in part, *Vest v. Cobb,* 138 W. Va. 660, 76 S.E.2d 885 (1953). "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). West Virginia Code § 49-4-705 addresses law enforcement officials in West Virginia who take juveniles into custody as proved by the definition of a "court" in West Virginia Code § 49-1-207, i.e., a "court" is "the circuit court of the county with jurisdiction of the case," and "juvenile referee" is the "magistrate appointed by the circuit court[.]" In the instant case, when Sgt. Chambers interrogated petitioner in Virginia, petitioner was in custody for violating Virginia criminal statutes and he was primarily being asked about those alleged Virginia offenses. Moreover, when Sgt. Chambers asked petitioner about his alleged West Virginia offenses, Sgt. Chambers was acting independently and not in the presence

of West Virginia law enforcement. Thus Sgt. Chambers was not bound by West Virginia Code § 49-4-705.

Furthermore, petitioner failed to establish that there was a "working arrangement" between the Virginia and the West Virginia officers. Petitioner was arrested in Virginia on a Virginia warrant. West Virginia officers were not involved in obtaining petitioner's arrest warrant, in his apprehension, or in his questioning. Moreover, Sgt. Chambers testified that he learned that petitioner was a suspect in a robbery and shooting in West Virginia because the victim's car was recovered in Virginia and the Federal Bureau of Investigations was involved in the investigation. Admittedly, Sgt. Chambers did call a West Virginia police officer and volunteered to inquire about the robbery and shooting in West Virginia. Nevertheless, because West Virginia authorities did not "avoid our state rules about prompt presentment" or "cross our border to apprehend" petitioner, *Guthrie* is inapplicable.

Petitioner's second assignment of error is that the circuit court erred when it found that petitioner knowingly, intelligently, and voluntarily waived his *Miranda* rights. "The majority of jurisdictions, including West Virginia, rely on the totality of the circumstances test in deciding whether statements by a juvenile were given voluntarily, knowingly, and intelligently." *State v. Sugg*, 193 W. Va. 388, 397, 456 S.E.2d 469, 478 (1995). "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. Pt. 3, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978).

Petitioner concedes that a juvenile can voluntarily, knowingly, and intelligently waive his *Miranda* rights if he has been properly advised of them. *Sugg*, 193 W. Va. at 398, 456 S.E.2d at 479. *See also*, Syl. Pt. 1, *State v. Laws*, 162 W. Va. 359, 251 S.E.2d 769 (1978) ("There is no constitutional impediment which prevents a minor above the age of tender years solely by virtue of his minority from executing an effective waiver of rights; however, such waiver must be closely scrutinized under the totality of the circumstances."). However,

> [w]here neither legal counsel nor the parents are present during interrogation, the greatest care must be taken by the trial court to assure that the statement of the juvenile is voluntary, in the sense not only that it was not coerced or suggested, but that it was not the product of ignorance of rights or of adolescent fantasy, fright, or despair.

*Sugg*, 193 W. Va. at 393, 456 S.E.2d at 474, syl. pt. 2. Moreover, petitioner asserts that

> any confession made by a minor must be scrutinized under the totality of the circumstance which includes an evaluation of the following factors:
>
>> 1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; 5) whether the accused was interrogated before or after formal charges had been

6

filed; 6) methods used in interrogation; 7) length of interrogations; 8) whether vel non the accused refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated an extra judicial statement at a later date.

*Laws*, 162 W. Va. at 363, 251 S.E.2d at 772 (1978) (quoting *West v. United States*, 399 F.2d 467, 469 (5th Cir. 1968)).

Petitioner asserts that when he was arrested by the Virginia police, he was taken from the hospital and placed in an interrogation room where one of his wrists was handcuffed to the wall. He was held in that room for hours before he was interrogated. He was not given the right to contact his parents or asked if he wanted a lawyer. He spent most of the time during the recitation of his *Miranda* rights with his head on the table and he did not review or sign a *Miranda* waiver form. Sgt. Chambers told petitioner that he was investigating a Virginia-based grand larceny and discussed the issue with petitioner for about an hour. Thereafter, petitioner was briefly removed from the room for the treatment of his injuries. Later, back in the interrogation room, Sgt. Chambers questioned petitioner about other matters including the shooting in West Virginia. Sgt. Chambers did not revisit petitioner's *Miranda* rights at that time. Moreover, at one point, petitioner indicated that he no longer wanted to talk to the officers; however, Sgt. Chambers brushed off that comment and continued to interrogate petitioner. Sgt. Chambers implied that petitioner should discuss the West Virginia crimes before he turned eighteen. Petitioner then implicated himself in those crimes, became ill, and vomited into a trash can. Petitioner contends that, only then was he released from the handcuffs and allowed to move around the interrogation room.

Petitioner argues that Sgt. Chambers left him handcuffed to the wall throughout the interrogation to pressure him to confess in the absence of counsel. Petitioner claims that he had never before been processed or interrogated at a police station because all of his prior encounters with law enforcement were in juvenile court. Petitioner further maintains that, due to his injuries, he was unable to make a written statement as Sgt. Chambers suggested during the interview. Further, petitioner highlights that he was not taken before a neutral judicial officer until he confessed to the West Virginia crimes. Finally, petitioner points to the fact that he declined to make a written statement after he spoke with the neutral judicial officer. Based on this record, petitioner argues that the circuit court clearly erred in finding that he freely, knowingly, and intelligently waived his Fifth Amendment right to remain silent. Accordingly, petitioner contends that the circuit erred in refusing to suppress his confession at trial.

Having reviewed the record on appeal, we cannot say that the circuit court's decision was plainly wrong or clearly against the weight of the evidence. *Sugg* and *Laws* make clear that there is no constitutional impediment that prevents a minor of tender years, solely by virtue of his minority, from executing an effective waiver of his right to remain silent. When petitioner confessed, the record shows that (1) he was seventeen years old; (2) he had an eleventh-grade education and could read and write; (3) he was very familiar with the criminal justice system, having been on probation from the time he was thirteen years old, and he had a detention warrant outstanding for one of those violations; (4) he showed no signs of mental impairment; (5) he acknowledged that he understood the waiver of his rights; and (6) he engaged in a lengthy and voluntary discussion with Sgt. Chambers. Further, Sgt. Chambers told petitioner that it was up to

him if he wanted to discuss his West Virginia crime. Accordingly, because petitioner knew he had a right to remain silent and to speak to an attorney, and then knowingly waived those rights and continued to speak to Sgt. Chambers, we find petitioner is entitled to no relief.

For the foregoing reasons, we affirm circuit court's October 30, 2019, sentencing order.

Affirmed.

**ISSUED:** January 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING:**

Justice John A. Hutchison

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision. Accordingly, I respectfully dissent.

**NOT PARTICIPATING:**

Justice William R. Wooton